**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE: Kathylene A. Marshall  :     Chapter 13
                                    Bankruptcy No. 15-18921 (amc)
        Debtor              :


Kathylene A. Marshall       :

        Debtor/Plaintiff    :
                                    Adv. No. 17-00088
            v.              :

Yasir A. Abdoun             :

        Defendant

**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO RECONSIDER
AND VACATE THE PORTION OF THE ORDER DATED FEBRUARY 11, 2020 AND
ENTERED OF RECORD FEBRUARY 11, 2020 (DOC 37) ENTERING JUDGMENT IN
FAVOR OF ABDOUN ON PLAINTIFF'S  CLAIM UNDER 11 U.S.C.
§548(a)(1)(B)(i)(ii)(I), ALLOWING ABDOUN'S ALOWED SECURED CLAIM
AND FAILING TO AWARD DEBTOR EMOTIONAL DISTRESS DAMAGES**

**INTRODUCTION**

Plaintiff  Kathylene Marshall, by her attorney, has filed
a motion pursuant to F.R.B.P. 9023(e) asking this Court to
reconsider and vacate paragraph 1 of its Order dated February 11,
2020, and entered of record on February 11, 2020 (Document #37),
entering judgment in favor of Defendant Abdoun on Debtor's claim
under 11 U.S.C. §548(a)(1)(B)(i)(ii)(I) and to reconsider and
vacate its failure to award Plaintiff damages, or other relief[1],

---

[1] Including recoupment of the emotional distress damages, or
rescission of the tax sale.  See *Agliori v. Metro. Life Ins. Co.*,
879 A.2d 315, 319, 231-322(Pa. Super. 2005)(discussing various
forms of relief, including rescission, available under 73 P.S.

for the emotional distress Plaintiff suffered as a result of
Abdoun's misconduct.  After a hearing on Plaintiff's motion the
Court gave the parties leave to brief the issues raised therein.
This Supplemental Brief is filed in support of Plaintiff's
motion.

As discussed below, the evidence presented at trial
plainly demonstrates Ms Marshall established the elements of a
cause of action against Abdoun for the intentional infliction of
emotional distress under applicable Pennsylvania Law.  For this
reason she is entitled to damages for the emotional distress she
suffered even if the tort was not named in her complaint as the
basis for that relief.  F.R.C.P. 54 (c); *Evans Prods. Co. v. W.
Am. Ins. Co.*, 736 F.2d 920, 923-24 (3d Cir. 1984).

In addition, Ms Marshall is entitled to relief for the
emotional distress foisted upon her by Abdoun's wrongful conduct,
both because such harm constitutes "actual damages" within the
meaning of 73 P.S. §201-9.2 and because the court is expressly
empowered to provide relief for such damages by the provision of
§201-9.2 which, in addition to authorizing the court to treble
the actual damages, also expressly empowers it to "provide such
additional relief as it deems necessary or proper."

---

201-9.2 which can be applied to accomplish the deterrence purpose
of the UFTPCPA).

Similarly, F.R.C.P. 54(c) requires the Court to entirely disallow Abdoun's proof of claim because the sheriff's deed upon which he bases his claim is a nullity.  It conveys no interest to Abdoun as the deed was the result of a sheriff sale which the court lacked the power to order and which the sheriff had no authority to conduct.  *City of Phila. v. Estate of Estate of Labrosciano*, 202 A.3d 145,155(Pa. Comwlth 2017).  A void decree can be attacked at any time in any court, *Brokans v Melnick*, 569 A. 2d 1373,1376(Pa. Super. 1989); a sheriff sale which follows from a void decree is absolutely void and any resulting title is a nullity.  *Dep't of Fin of Sussex Cty v. Clarke,* 2019 Del. Super. Lexis 471, *12(Del. Supre. Ct. 2019; *Meritor Mortgage Corp v Henderson* 421 Pa. Super.339, 617 A. 2d 1323(Pa. Super 1992). The deed upon which Abdoun relies for its security interest is a nullity as a matter of state law that conveyed nothing to him, and does not constitute a valid interest in Debtor's home.

Abdoun's claim must be disallowed as a secured claim for these reasons, even if Plaintiff did not expressly articulate them as the basis for this relief in her complaint.

Finally, the undisputed credible evidence in the record demonstrated that, if the deed relied upon by Abdoun was not void *ab initiao,* it must be avoided under 11 U.S.C. §548(a)(1) because Debtor met her burden of showing that Debtor involuntarily

received "less than a reasonably equivalent value in exchange for

such transfer, within the meaning of 11 U.S.C §548(a)(1)(B(I).

The Court in the decision which it has agreed to reconsider used

a standard for applying section 548 that was inconsistent with

the facts of this case and inconsistent with the holding of the

Supreme Court in *BFP v Resolution Trust Corp., 511 U.S. 531*

*(1994).*

**I.   F.R.C.P. 54(c) ,REQUIRES THE COURT TO AWARD PLAINTIFF DAMAGES FOR HER EMOTIONAL DISTRESS BASED ON THE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, IF NOT PURSUANT TO THE FCEUA. IT ALSO REQUIRES THE COURT TO FIND ABDOUN TO BE THE HOLDER OF A TOTALLY UNSECURED CLAIM, IF HE IS THE HOLDER OF ANY CLAIM AT ALL, BECAUSE THE DEED UPON WHICH HE RELIES IS VOID AS A MATTER OF STATE LAW, WHETHER OR NOT THE DEED IS A FRAUDULENT CONVEYANCE WITHIN THE MEANING OF 11 U.S.C. §548.**

**A.   The Evidence at Trial Establishes Plaintiff's Entitlement to Damages for the Tort of Intentional Infliction of Emotional Distress**

**1. Rule 54(c) requires the court to grant Plaintiff relief for the intentional infliction of emotional distress even if that tort may not have ben articulated as a basis for such relief in the complaint.**

F.R.C.P. 54(c)is made applicable to adversary actions in

bankruptcy court by F.R.B.P 7054(a).  Rule 54(c) provides:

( c) **Demand for Judgment; Relief to be Granted**

A default Judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.  **Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.** (emphasis added).

-4-

The Third Circuit has expanded on the application of Rule 54(c) as follows:

> Adherence to the rigid theory-of-the-pleadings doctrine has been abolished by the Federal Rules of Civil Procedure. A court is not limited to granting relief to a party solely on the basis of theories of recovery set forth in the pleadings. For instance, Fed.R.Civ.P. 54(c) **requires** that the judgment entered shall grant the relief to which a party is entitled, even when such relief was not demanded in the pleadings.
>
> Not unexpectedly, Fed.R.Civ.P. 54(c) has been used to grant relief based on theories of recovery different from those theories set forth in the pleadings. For instance, an insurance policy may be reformed in an action seeking a declaration of nonliability, *Metropolitan Casualty Ins. Co. of New York v. Friedley*, 79 F. Supp. 978 (N.D. Iowa 1948). Specific performance of a contract may be awarded on a claim seeking cancellation and rescission. *Garland v. Garland*, 165 F.2d 131 (10th Cir. 1947). Recovery, based on a theory of quantum meruit or on a theory of unjust enrichment, or on the principle of contribution may be allowed in an action instituted for breach of contract. Recovery may be granted for breach of contract even though the complaint alleges only a tort. *See, in general*, 10 Wright, Miller and Kane, Federal Practice and Procedure § 2664 at 163169 (1983).
>
> This does not mean, however, that there are no restrictions on the relief that may be granted under Fed.R.Civ.P. 54(c). What a court may do ultimately is limited by fundamental notions of due process and fair play. *Sylvan Beach, Inc. v. Koch*, 140 F.2d 852, 861-862 (8th Cir.1944). Fed.R.Civ.P. 54(c) permits relief based on a particular theory of relief only if that theory was squarely presented and litigated by the parties at some stage or other of the proceedings. *Cioffe v. Morris*, 676 F.2d 539, 541 (11th Cir. 1982). Put another way, relief may be based on a theory of recovery only if that theory was presented in the

> pleadings or tried with the express or implied
> consent of the parties. *Monod v. Futura, Inc.*, 415
> F.2d 1170, 1174 (10th Cir. 1969).

*Evans Prods. Co. v. W. Am. Ins. Co.*, 736 F.2d 920, 923-24 (3d

Cir. 1984)[2](emphasis added).  This understanding of the import of

Rule 54(c) has been echoed by the various circuit courts and by

the courts of this district.  E.g. *Yoder v. Univ. of Louisville*,

417 App'x 529, 530(6th Cir. 2011) (Rule 54(c) affords Courts

"flexibility in crafting relief so that a plaintiff may recover

on a valid claim regardless of counsel's pleading errors.");

*Norfolk S. Ry. Co. V Pittsburgh & W.Va. R.R.* 153 F. Supp. 3d 778,

810-12 (W.D. Pa. 2015)(breach of contract claim, not expressly

pled, tried by implied consent where parties recognized the issue

had entered the case at trial, where evidence that supports the

unpleaded theory for relief was introduced at trial without

---

[2] In *Evans* the Third Circuit determined Rule 54(c) to be
inapplicable to the facts of that case and held it could not be
relied on by the court below to justify its granting relief based
on events that occurred more than seven months after the
pleadings had closed, on a theory that had been neither raised
nor addressed by either party and where the case had been
submitted on a stipulated record framed by the pleadings, with no
opportunity to present evidence or for the issue to be tried by
express or implied consent. *Evans*, 736 F.2d at 924.  The court
remanded the case to the district court to determine if leave
should be granted to Plaintiff to amend to add the later
occurring events as the basis for relief, with instructions to
the district court to provide the defendant with an opportunity
to respond to such amended complaint and to present further
evidence in its defense. *Id.*  The considerations that led the
3rd Circuit to not apply Rule 54(c) in *Evans* do not pertain to
the instant case.

objection, and where there was no prejudice to opposing parties'
ability to respond with the introduction of appropriate
evidence); *Great Point Intermodal, LLC v Norfolk S. Corp. (In
Great Point Intermodal, LLC)* 334 B.R. 359, 362(Bankr. E.D. Pa.
2005)(when substantive law authorizes prejudgment interest,
Rule54(c)permits award of interest despite pleader's failure to
demand it in the pleadings); *Sandak v. Dobrayel (in Re
Dobrayel)*,287 B.R. 3, 19 n.14 and 19-21 (Bankr. S.D.N.Y.
2002)(Rule 54(c) permitted court's *sua sponte* grant of relief on
a theory of recovery not pleaded in the complaint where facts
established at trial were consistent with allegations in
complaint.)  In the instant case, the un-plead legal theories set
forth herein which entitle Ms Marshall to the relief she seeks
were tried by implicit, if not explicit, consent.  And their
being raised at this stage of the case does not in anyway
prejudice Abdoun.

    All the evidence in support of the theories that were not
pleaded was admitted without objection or was stipulated to.
Abdoun had an opportunity to and did submit evidence to rebut
Plaintiff's evidence with his own, where there were factual
issues subject to dispute.  Finally, Abdoun will have an
opportunity to present such arguments he may have to the grant of
the relief on the unpleaded theories in his response to this

supplemental memorandum.[3]  Thus the theories for relief raised

herein have been tried by implied, if not express, consent and

must be treated in all respects as if raised in the pleadings.

F.R.C.P. 15(b)(2)[4].

       2. **The facts alleged in Plaintiff's Complaint and
established at trial, without objection, demonstrate Plaintiff to
be entitled to recover damages for Abdoun's intentional
infliction of emotional distress upon her.**

       The Third Circuit Court of Appeals has on several

occasions predicted the Pennsylvania Supreme Court will

ultimately embrace the Intentional Infliction of Emotional

Distress (IIED) as an actionable tort in the Commonwealth.  The

Third Circuit further expressed its belief, "[i]n light of extant

case law, ... that the black letter rule of §46 of the

Restatement [(Second)of Torts(1965)], along with the interpretive

comments, may be applied as the basis in Pennsylvania law for the

---

[3]  Because no prejudice to Abdoun would result from its
doing so, as the issues raised herein have been tried by implied,
if not express, consent, the Court would be required to permit
Plaintiff to conform her pleadings to the evidence to include the
theories for relief discussed herein if such an amendment were
required.  F.R.C.P. 15(b); See *United States v. Hougham*, 364 U.S.
310, 316-17, 81 S. Ct. 13, 18, 5 L.Ed.2d 8, 14-15 (1960)("The
Federal Rules reject the approach that pleading is a game of
skill in which one misstep by counsel may be decisive to the
outcome and accept the principle that the purpose of pleading is
to facilitate a proper decision on the merits."  Conley v.*Gibson*,
355 U.S. 41, 48(1957).

[4] F.R.B.P. 15 is made applicable to the instant adversary
proceeding by F.R.B.P. 7015.

tort of the intentional infliction of emotional distress." *Chuy v. Phila. Eagles Football Club*, 595 F. 2d 1265, 1273-76 (3d Cir. 1979); *Williams v. Guzzardi*, 875 F.2d 46, 51 (3d Cir. 1989) (predicting Pennsylvania Supreme Court will embrace the tort and the Restatement §46); *Silver v Mendel*, 894 F. 2d 598, 606(3d Cir. 1990)(relying on example in §46 of Restatement 2d, held, allegations defendants threatened plaintiff with physical injury and destruction of business in order to extort money and thereafter carried out part of threat, stated a claim for relief under Pennsylvania law for intentional infliction of severe emotional distress); See *Papieves v. Kelly*, 437 Pa. 373, 378-79. 238 A. 2d 118, 121 (1970)(recovery may be had for serious mental or emotional distress directly caused by the intentional and wanton acts of mishandling a decedent's body).

As articulated by the Third Circuit:

" ... there are four elements to the action under §
46: (1) the conduct must be extreme and outrageous;
(2) the conduct must be intentional or reckless;
(3) it must cause emotional distress; and (4) the
distress must be severe."

*Chuy v. Phila. Eagles Football Club*, 595 F. 2d at 1273. In her complaint Ms. Marshal cataloged some of the illegal actions Abdoun took to dispossess her from her property and to essentially extort either rent payments from her, to which he had no legal right, or possession of the property from her, to which

he had entitlement.   The complaint included the following

allegations:

> 52. In addition, Defendant's conduct caused
> Plaintiff emotional distress including, but not
> limited to, anxiety, loss of sleep,
> restlessness, loss of appetite, fear of being
> made homeless.

> 53. Plaintiff suffers from a host of physical
> and emotional maladies which were aggravated by
> Defendant's unlawful conduct in connection with
> his attempt to collect his redemption claim
> from Debtor.

In her prayer for relief, Ms Marshall asked the court,

*inter alia*, to:

> a. Award Debtor her actual damages, including
> damages for emotional distress ... in an amount
> to be determined at trial ...."

At trial Ms Marshall, testified extensively, without objection,

to Plaintiff's outrageous conduct and to the severe emotional

distress she suffered as the result of it.   Evidence of her

emotional distress was also offered by Ms Marshall's son.   See

*Marshall v. Abdoun*, 613 B.R. 194, 204-205(Bankr. E.D. Pa. 2020).

Abdoun in response offered testimony of his version of the events

in which he sought to justify his conduct.   In its memorandum

opinion following trial, the court summed up its factual findings

stating:

> ... Abdoun impermissibly attempted to collect
> rent from the Debtor and evict her from the
> Property on numerous occasions. ... When Debtor

> filed for Bankruptcy ..., Abdoun continued his
> attempts to impermissibly collect rent from
> Debtor and filed overstated proofs of claim
> which improperly included amounts for rent.
>                    ...
> Abdoun's multiple attempts to have Debtor
> vacate the property **were clearly intentional
> and wrongful.**  In fact, Abdoun made it appear
> to the police that the Debtor was a squatter
> **when he knew she was not,** forcing her to defend
> herself to the police and humiliating her in
> front of her neighbors.  Furthermore, Abdoun
> **intentionally and repeatedly** continued to
> demand rent he had no right to collect.

*Marshall v. Abdoun*, 613, B.R. at 202, 220(emphasis added).  The

Court characterized Abdoun's unlawful attempts to collect rent

and to evict Ms Marshall from her home as "egregious and

unlawful."  *Id*. at 201.  The Court recited a litany of unlawful

acts Abdoun committed in pursuit of those goals:

> Therefore, by **falsely** claiming that he was
> entitled to possession and rent on multiple
> occasions, Abdoun misrepresented the character
> and legal status of the debt ...
>
> Additionally, by threatening to collect rent
> that he was not owed, Abdoun threatened to take
> action that he would not have been legally
> entitled to take.... Furthermore, by enlisting
> the police to facilitate the ejectment of the
> Debtor from the Property, Abdoun took
> "nonjudicial action to effect dispossession. .
> .of property" when there was "no present right
> to possession of the property claimed as
> collateral through an enforceable security
> interest" ....  Abdoun's use of the police to
> attempt to have Debtor removed ... **falsely
> implied that the Debtor had committed a crime**
> by remaining in the Property **when she had not.**

*Marshall v Abdoun* 613 B.R. at 215 (citations to FCEUA omitted,
emphasis added).   That Abdoun's outrageous conduct is also
expressly prohibited by the FCEUA does not make it any less
outrageous, nor does it insulate the conduct from creating
liability, independent of the FCEUA, as a tort.   *Agliori v.
Metro. Life Ins. Co.*, 879 A.2d 315, 319(Pa. Super. 2005) ("Case
law ... makes clear that the UTPCPL was meant to supplement--not
to replace--common law remedies.");*In re Littles*, 90 B.R. 669,
680(Bankr. E.D. Pa. 1988)("...[T]ort of intentional infliction of
mental distress remains available as an alternative cause of
action [to claims under FDCPA and DCTPR[5]] for particularly
extreme abusive collection practices."); See *Benjamin v Global
Collection Agency,* 1974 Pa. Dist & Cnty. Dec. Lexis 108; 71 Pa.
D.&C. 2d 56(Del. Cnty 1973)(Plaintiff stated claim for
intentional infliction of emotional distress based on conduct
made unlawful by Pennsylvania Unlawful Collection Practices Act,
a criminal statute, even though criminal statute itself did not
create a civil remedy.)   The effects of Abdoun's conduct on Ms
Marshall is summarized at p. 203 of the Court's opinion.

---

[5] Pennsylvania state Debt Collection Trade Practices
Regulations (DCTPR), 37 PA Code 303.1 et seq that preceded the
FCEUA, were codified and repealed by the enactment of the Fair
Credit Extension Uniformity Act.  See the discussion at Part III
below.

*Marshall v. Abdoun*, 613, B.R. at 203.  Ms Marshall was publicly
humiliated by Adboun in front of her neighbors.  He lied to the
police to get them to throw her out of her home and relinquish
possession of it to him, when he had no right to such possession.
His conduct triggered memories of the "many humiliating public
encounters [Ms Marshall] previously experienced with the police
due to her husband's behavior in prior years.
The court found:

> For approximately six months after the police
> encounter, the Debtor experienced intense fear
> that Abdoun would return with the police and
> force her to leave. *Id.* at 53:13-21, 56:8-14.
> In fact, she rarely left the Property for fear
> that the police would lock her out when she was
> not home. *Id.* at 53:22-54:7. Due to her fear
> and anxiety, she became impatient, constantly
> felt "overanxious," struggled to concentrate
> and sleep, and cried frequently. *Id.* at 54:14-
> 55:23. Her Son observed that she had "a weight
> on he [sic] back" since she spent many nights
> after the police encounter crying on the phone
> to her friends. *Id.* at 71:21-25, 72:10-15.

*Marshall v. Abdoun*, 613 B.R. at 204.

In short the evidence at trial, as found by the Court,
demonstrates Ms Marshall has established all the elements
necessary for damages to be awarded her as the victim of the tort
of the intentional infliction of severe emotional distress under

Restatement §46.[6]   Abdoun's intentional conduct was "extreme and

outrageous".   The court characterized it as "egregious and

unlawful".   *Marshall v Abdoun*, 613 B.R. at 202.   It included

lying to the police, falsely accusing Ms Marshall of criminal

conduct and essentially attempting to extort Ms Marshall into

paying Abdoun money and relinquishing her home.   Abdoun's conduct

is analogous to the conduct described in comment e.,

illustrations 5 and 7 to §46 of the Restatement.   It is in some

ways a combination of the two.   There are also elements of

illustration 3 to §46 of the Restatement, as Abdoun arranged for

the police to publically confront Ms Marshall in front of her son

and her neighbors about her right to live in her home.

     The court found that Abdoun's conduct had caused Ms

Marshall emotional distress and the emotional distress was severe

- i.e. it was not a passing event, but went on for six months,

including intense fear of being evicted; for that period of time

she was anxious, impatient, overanxious "struggled to concentrate

and sleep and cried frequently.   Her son observed that she had a

"weight on [her] back" and spent many nights after the police

encounter crying on the phone to her friends.

---

[6] Abdoun had the opportunity to offer evidence to rebut Ms
Marshall's version of the facts, but offered little in the way of
a defense other than to attempt to justify his conduct and to
downplay its egregiousness.

This is precisely the type of "severe" distress for which the cause of action is intended to provide relief.  See Restatement (Second) §46, comment j.  It is not "transient" and "trivial" distress that lasted a day, but included anxiety, fright, humiliation, worry, crying and sleeplessness that went on for 6 months.  Given Abdoun's repeated conduct and demands, Ms Marshall's distress was not exaggerated or unreasonable, *Id.*, and was not occasioned by a trivial conduct that society would expect one to easily shrug off.

The record reflects that Ms Marshall has satisfied the four elements for relief for the tort of the intentional infliction of emotional distress.  Consistent with the requirement of Rule 54(c), Ms Marshall is entitled to relief in the form of monetary damages as compensation for the severe emotional distress which she demonstrated she suffered, even if she did not articulate that theory as the basis for her right to the relief in her complaint.  *Yoder v Univ. Of Louisville*, 417 F. App'x at 530(Rule 54(c) affords courts "flexibility in creating relief so that a plaintiff may recover on a valid claim regardless of counsel's pleading errors.")

**B.   The Evidence at Trial Establishes the Deed Upon Which Abdoun Bases his Interest in Debtor's Home as A Secured Creditor to be a Nullity that Gives Him no Interest in the Property.**

**1. Rule 54(c) requires the Court to find whatever claim Abdoun may have to be totally unsecured because the evidence adduced without objection at trial demonstrates the deed upon which Abdoun relies to be a nullity which conveys nothing under applicable state law, whether the deed is avoidable Under 11 U.S.C. §548 or not.**

Rule 54(c) is applicable to Ms Marshall's objection to the allowance of Abdoun's claim as an allowed secured claim. Though Ms Marshall's complaint bases her objection to the secured status of the claim upon 11 U.S.C. §548, the evidence introduced at trial, without objection, demonstrates the deed upon which Abdoun relies to be a nullity as a matter of state law that conveyed no interest in Debtor's home to him.[7]

Though these theories for relief were not expressly articulated in the complaint, the facts entitling Ms Marshall to relief based on them were.  The complaint alleges the following relevant facts:

> 6.   On or around July 1, 2014, the City of Philadelphia (the "City") filed a Petition for a Rule to Show Cause in the Court of Common Pleas seeking permission to sell Debtor's interest in her home in satisfaction of alleged delinquent real estate taxes from in a total amount of $9,777.13 including interest, penalty, attorney fees and lien costs. (hereinafter "2014 City Tax Action").

> 7.   On or about July 28, 2014, the Court of Common Pleas for the City of Philadelphia

---

[7] See the discussion of Rule 54(c) at part I. A.1. above and the cases cited therein.

issued a Rule granting the City's Petition to
show cause why a Decree should not be entered
permitting the sale of the Property.

8.   In violation of the requirements of the
Municipal Claims Tax Lien Act ("MCTLA")
the Rule did not provide for a hearing to be held
before the issuance of a Decree permitting the
sale. *City of Philadelphia v. Manu*, 76 A.3rd
601, 605-608 (Pa. Cmwlth. 2013).

9.   On or about January 6, 2015 the Court of
Common Pleas for the City of Philadelphia
issued a Decree permitting the Property to be
sold by the Sheriff.

10.   This order was facially and fatally
defective as it was issued in the absence of a
hearing.  Without a hearing the court was
without authority to order the sale.  *City of
Philadelphia v. Manu*, 76 A.3rd at 605-608.

Additionally, in the *Wherefore* clause of Count I of the complaint

Plaintiff asked the court, in addition to the specific relief

prayed for, to "Grant such other relief as may be necessary and

proper under applicable law."

The deed is invalid because the court order authorizing

the sheriff sale was entered in the absence of the hearing

required by MCTLA section 31.2.  The lack of the hearing deprived

the state trial court of any authority to authorize the sale.

*Labrosciano*, 202 A.3d at 154-155(Pa. Cmwlth 2018)("... Section

31.2 hearing is a **jurisdictional** prerequisite to a sheriff sale,

without which the trial court **lacks jurisdiction to authorize a

sheriff sale**.")(emphasis added); *City of Philadelphia v Sikder,*

2018 Pa. Commw, Unpub Lexis 672, *8,*10 (Pa. Cmwlth 2018)(In the absence of a §31.2 hearing trial, trial court lacked jurisdiction to enter order scheduling sale)(non-precedential); *City of Philadelphia v. Manu*, 76 A.3d 601 at 605-608 (Pa. Cmwlth 2013)( Section 31.2 hearing is a jurisdictional prerequisite to the court authorizing a tax sale).  That the order was entered without the requisite hearing was plainly alleged in the complaint.  More importantly, evidence of this fatal deficiency was entered without objection at trial.  In fact the evidence was was stipulated to by the parties and is indisputable.  *Marshall v. Abdoun*, 613 B.R. at 203 ; Ex. S-3, S-4; SOF ¶¶ 6, 7.

        For this reason, the dictates of Rule 54(c) require this court to disallow Abdoun's proof of claim as a secured claim, secured by an interest in Ms Marshall's home, since the Sheriff's deed creating the security interest is fatally defective under applicable state law, even if this fundamental invalidity of the deed was not articulated as the basis for this relief in Ms Marshall's complaint.  F.R.C.P. 54 (c); See *Evans Prods. Co. v. W. Am. Ins. Co.*, 736 F.2d at 923-24.

        **2. The facts alleged in Plaintiff's Complaint and established at trial, without objection, demonstrate The Deed upon which Abdoun relies for his security interest to be a nullity.**

        **a. The Sheriff's Deed pursuant to an order by a court lacking jurisdiction to enter the order conveyed nothing,**

**rendering Abdoun's claim unsecured and totally without basis**.

As the Commonwealth Court of Pennsylvania has clearly articulated, in the absence of a hearing required by 53 P.S. §7283(a)[8] a trial court "lack[s] jurisdiction to authorize the sale of the Property at a sheriff's sale." *City of Phila. v. Estate of Labrosciano*, 202 A.3d 145at 152-155(Pa. Cmwlth 2018); *City of Philadelphia v Sikder,* 2018 Pa. Commw, Unpub Lexis 672, *8,*10 (Pa. Cmwlth 2018)(In the absence of a §31.2 hearing trial, trial court lacked jurisdiction to enter order scheduling sale)(non-precedential); *City of Philadelphia v. Manu*, 76 A.3d 601 at 605-608 (Pa. Cmwlth 2013)( Section 31.2 hearing is a jurisdictional prerequisite to the court authorizing a tax sale.) The holding of the Commonwealth Court in *Labrosciano* is dictated by the oft repeated teaching of the Pennsylvania Supreme Court articulated in the context of the Real Estate Tax Sale Law in *Tracy v County of Chester* as follows:

> Somehow, over the years, taxing authorities
> have lost sight of the fact that it is a
> momentous event under the United States and the
> Pennsylvania Constitutions when a government
> subjects a citizen's property to forfeiture for
> the non-payment of taxes. We have had occasion
> before to note that we hold no brief with
> wilful, persistent and long standing tax
> delinquents, but at the same time, we have also

---

[8] Section 31.2 of the Municipal Claims and Tax Lien Act (MCTLA)

> observed that the "strict provisions of the
> Real Estate Tax Sale Law were never meant to
> punish taxpayers who omitted through oversight
> or error . . . to pay their taxes." *Ross
> Appeal*, 366 Pa. 100, 107, 76 A.2d 749, 753
> (1950). As this Court stated in *Hess v.
> Westerwick*, "the purpose of tax sales is not to
> strip the taxpayer of his property but to
> insure the collection of taxes." 366 Pa. 90,
> 98, 76 A.2d 745, 748 (1950). The collection of
> taxes, however, may not be implemented without
> due process of law that is guaranteed in the
> Commonwealth and federal constitutions; and
> this due process, as we have stated here,
> requires at a minimum that an owner of land be
> actually notified by government, if reasonably
> possible, before his land is forfeited by the
> state. Reasonable efforts to effect actual
> notice were not carried out in this case, and
> the tax sale of this property must be set
> aside.

*Tracy v. County of Chester*, 507 Pa. 288, 297 (Pa. April 3, 1985)[9]

Since the order authorizing the sale of Ms Marshall's

home was void, because the court entering it was without

authority to do so, the sheriff's deed executed pursuant to that

order conveyed nothing to Abdoun.  *Cash v. Tozer*, 1 Watts & Serg.

519, 529 (Pa. 1841)(sale conducted by sheriff without authority

utterly void and passes no title); *Dale v Medcalf*, 9 Pa. 108, 109

(Pa. 1848)(Sheriff's deed conveyed no title when sale not made as

---

[9] It is clear from the evidence at trial that Ms Marshall's
tax delinquency was the result of an error on her part in
believing her abusive husband would keep the taxes current as he
had agreed to do after their separation.  See *Marshall v Abdoun*,
613 B.R. at 202-203.

the legislature had required); *Federal Land Bank of Baltimore v King*, 294 Pa. 86, 97 (1928)(Sheriff lacked authority to sell property owned by terre tenant without judgment against the mortgagor); *Dep't of Fin of Sussex Cty v. Clarke,* 2019 Del. Super. Lexis 471, *12(Del. Super., 2019)(a sheriff sale which follows from a void decree is absolutely void and any resulting title is a nullity); *Jones v. LaSalle Nat'l Bank (In re Jones)*, Nos. 02-15197DWS, 03-0197, 2004 Bankr. LEXIS 1273, at *15 (Bankr. E.D. Pa. 2004)("It is undisputed that where a judgment is void as it would be when the court had no jurisdiction, the sheriff's sale which follows is a nullity. ... In such case, title will not pass to any purchaser, innocent or otherwise.")(citations omitted); See *City of Philadelphia v. Estate of Estate of Labrosciano*, 202 A.3d at155(trial court abused discretion by failing to set aside sheriff sale conducted pursuant to court order void for want of jurisdiction).

A void decree can be attacked at any time in any court; *Brokans v Melnick*, 569 A. 2d 1373, 1376(Pa. Super. 1989); See *Meritor Mortgage Corp v Henderson* 421 Pa. Super.339, 617 A. 2d 1323(Pa. Super 1992)(Sheriff's deed resulting from a judgment entered in the absence of in personam jurisdiction subject to collateral attack);*In re Murray's Estate*, 158 Pa. Super. 504, 510, 45 A.2d 411, 415 (Pa. Super. 1946).  Thus, even if the

transfer represented by the deed is not avoided under 11 U.S.C.

§548, because of the invalidity of the sheriff's deed upon which

Abdoun relies, his proof of claim must be disallowed as a claim

secured by a lien on Debtor's home.[10]   See *Jones v. LaSalle Nat'l*

_____

[10] Because no transfer occurred as a result of the invalid
sheriff's deed, Abdoun's entire claim against Debtor fails and
must be disallowed.  The so called "redemption claim" Abdoun
would ordinarily acquire in the event of a valid tax sale is not
a personal liability of Debtor that exists independent of the
property interest ordinarily transferred by a valid tax sale
deed.  The interest ordinarily transferred is an incipient right
to the vesting of interest in the property in the event the
redemption period expires without the right of redemption being
exercised.  53 P.S. §7293(a); *Marshall v Abdoun*, 613 B.R. at 215;
*In re Pittman* 549 B.R. 614, 620 -623. (E.D. Pa. 2016); In re
Hammond, 420 B.R. 633, 635(Bankr. W.D. Pa. 2009).

Abdoun has no right to payment of the redemption amount
independent of the "defeasible title, liable to be defeated by a
redemption within the period prescribed by statute" that would
ordinarily be conveyed by a valid tax sale deed.  *Appeal of
Gault*, 33 Pa. 94, 96, 94, 16 Legal Int. 164 (1859);  *Easton v
Sulkin*, 19 Pa. D. &C. 152, 24 North. Cty Rep. 40 (1933);
*Shalemiller v McCarty*, 55 Pa. 186, 188(1867)(tax sale purchaser
"takes only an inchoate title which requires the lapse of [the
redemption period] to ripen into an absolute title."); *City of
Philadelphia v Woodside*, 10 Pa. D.&C. 565, 566 (Phila. Cty
1928)("The [tax sale] purchaser takes only an inchoate title ...;
but if before the expiration of the [redemption period] the
petitioner, as owner, seeks to redeem the property, the
purchaser, upon payment of the amount which the sheriff received,
should release his claim of title.)

While this result may appear harsh, the rule for purchase of a
property at a Sheriff sale is "buyer beware.  See *Lance v.
Gorman*, 136 Pa. 200, 20 A. 792, 27 Week. Notes Cas. 45, 47 Legal
Int. 535, 38 Pitts. Leg. J. 183 (Pa. 1890))("the Supreme Court
has held that it is the duty of every man, who purchases at
sheriff's sale, to examine the record and ascertain how the title
stands").  Furthermore, "a purchaser of land at sheriff's sale
buys at his own risk and acquires only the interest which the
defendant in the execution had, and no more." *Weidler v.*

*Bank (In re Jones)*, Nos. 02-15197DWS, 03-0197, 2004 Bankr. LEXIS 1273, at *17, n. 18 ("As no property has ever been transferred given the invalidity of the judgment and sale, there has been no transfer of the estate's interest to avoid under either §544 or §549.")

## II.   IN DENYING THE §548 CLAIM THE COURT OVERLOOKED EVIDENCE IN THE RECORD AND FAILED TO TAKE INTO ACCOUNT THE LACK OF A VALID STATE COURT ORDER PERMITTING THE FORCED SALE OF DEBTOR'S HOME

The Court in declining to avoid the transfer under 11 U.S.C. §548 held that Debtor "failed to demonstrate that the purchase price was not reasonably equivalent to 'the price that would have been received if the foreclosure sale had proceeded according to law.' " *Marshall v Abdoun,* 613 B.R. at 207(citations omitted).  The Court further states;

> "At trial, the Debtor failed to produce <u>any</u> evidence that would support a finding that the tax sale price would have been higher if the State Court had held the Hearing before it issued the Decree permitting the Property to be sold. ... Instead, the Debtor based her case on the mere speculation that, had the Hearing occurred prior to the issuance of the Decree, no sale would have occurred.  The Debtor provided no basis for this speculation, nor does this speculation have any impact on the issue which the Debtor has the burden to

---

*Farmer's Bank of Lancaster*, 11 Serg. & Rawle 134, 1823 Pa. LEXIS 140 (Pa. 1823). Abdoun would fare better if there was a transfer to be avoided pursuant to 11 U.S.C. §548.

> demonstrate - whether the Property would have
> been sold for a higher price if the Hearing had
> been held prior to the issuance of the Decree."

*Marshall v Abdoun,* 613 B.R. at 212(emphasis in original)

(citations omitted).

In reaching these factual conclusions, the Court overlooked evidence in the record supporting the inference that there would have been no sheriff sale had the hearing required by state law been held.  This is so either, because, if a hearing had been scheduled, and if Ms Marshall had been served with notice of it, she would have attended such a hearing and addressed the delinquent taxes, as she attempted to do in 2013, when she first learned that her husband had failed to pay the taxes as he had promised.  Or, because, the state court would have denied the petition for want of proper service, since, as was actually the case, the rule to show cause had not been properly served.  Tr. 59:17 - 61:8.

More importantly, on the record before this Court, it is impossible for any valid forced sale to occur or to have occurred, because to this date, the hearing, which is a precondition to the existence of a valid order compelling a forced transfer, has never taken place.  *Marshall v Abdoun,* 613 B.R. at 203; Ex. S-3, S-4; SOF ¶¶ 6, 7.  *Labrosciano*, 202 A.3d at 154-155("... Section 31.2 hearing is a **jurisdictional**

-24-

prerequisite to a sheriff sale, without which the trial court
lacks jurisdiction to authorize a sheriff sale.")(emphasis
added); *City of Philadelphia v Sikder,* 2018 Pa. Commw, Unpub
Lexis 672, *8,*10 (Pa. Cmwlth 2018)(In the absence of a §31.2
hearing trial, trial court lacked jurisdiction to enter order
scheduling sale)(non-precedential); *City of Philadelphia v. Manu*,
76 A.3d 601 at 605-608 (Pa. Cmwlth 2013)( Section 31.2 hearing is
a jurisdictional prerequisite to the court authorizing a tax
sale.)  There is nothing in the record before this court to
suggest that Debtor's home is subject to a valid order compelling
a forced sale.[11]  *Labrosciano*, 202 A. 3d at 155(in absence of a
hearing required by MCTLA, trail court lacked jurisdiction to
enter Decree allowing Property to be sold at a sheriff's sale).

     In denying Debtor the relief she seeks under 11 U.S.C.
§548, the Court also misapplied the standard required by the
Supreme Court for determining a property's "reasonable equivalent
value" where, as in the instant case, the decree authorizing a
forced sale is a nullity and the sheriff lacked any authority to
conduct a forced sale.  In the instant case, because the
Philadelphia Court of Common Pleas lacked jurisdiction to issue a
decree compelling the sale, Debtor's property was not one that

---

[11] See the discussion at Part I.B. above.

was subject to being sold within the strictures of a foreclosure sale.  It was in fact a property that Debtor had a right to sell at "leisure and pursuant to normal marketing techniques."

In contrast to the authority relied upon by the Court in reaching its decision, this is not a case in which a decree compelling a sale was validly entered, but one in which the sale itself was improperly conducted in a manner that resulted in a price that was less than would normally have been produced at a forced sale.  See cases cited at *Marshall v Abdoun,* 613 B.R. at 212.  This is a case in which there was no authority for a forced sale as the state trial court lacked jurisdiction to enter the decree.  Thus the relevant measure of the "reasonable equivalent value" of the property at the time of the transfer is not the price that would have been produced at a foreclosure sale, but what "one would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques."  See *BFP*, 511 U.S. at 538-39.

As the Supreme Court in BFP observed:

> ...the reasonably equivalent value criterion
> will continue to have independent meaning
> (ordinarily a meaning similar to fair market
> value ) outside the foreclosure context.

*BFP, 511 U.S.* at 545 -546.  The requirement in MCTLA, that there be a hearing prior to the issuance of a decree permitting the

forced sale of the property, is not for the purpose of preventing

a forced sale at a grossly insufficient price.  It is to provide

protection against a sale **taking place at all** in the absence of

proper service of the petition and compliance with the

requirements of the law authorizing such sales on a petition, and

as a means of insuring due process before the government takes

the extraordinary step of depriving a citizen of their home.

*Labrosciano*, 202 A.3d at 153, 154.  The evidence in the record

before this Court demonstrates that a prerequisite for a valid

order compelling a sale never occurred, rendering the order

authorizing the sale invalid and the sale itself a nullity.

For this reason, the proper measure for determining

whether the putative transfer to Abdoun represented by the

Sheriff's deed was for "reasonably equivalent value" is not to

the price that would have been paid had a valid order compelling

a sale been entered and a sale been properly conducted pursuant

to that order, but to what the fair market value of the property

was at the time of the transfer.  Based on the evidence admitted

at trial that value of Debtor's home was as much as $250,000.00 -

which is what Defendant admitted the fair market value of the

property to be in his proof of claim, or at least $76,400.00 -

which is what the city determined the value to be at the time of

the deed.  Ex. S-4, pp.4-5; S-5, p. 2; S-8.

-27-

Thus, if the claim is not disallowed entirely for the reasons set forth in part I. B. above, rendering avoidance pursuant to 11 U.S.C. §548 unnecessary, the transfer represented by the invalid Sheriff's deed must be avoided pursuant to 11 U.S.C. § 548, the property recovered pursuant to 11 U.S.C. §550(a)(1) and Abdoun's claim disallowed.

**III.   IN DETERMINING THAT THE FAIR CREDIT EXTENSION UNIFORMITY ACT DOES NOT PERMIT DAMAGES FOR EMOTIONAL DISTRESS THE COURT OVERLOOKED THE PROVISION OF 73 P.S. §201-9.2 THAT PERMITS THE COURT TO PROVIDE SUCH ADDITIONAL RELIEF AS IT DEEMS NECESSARY OR PROPER; IGNORED THE PLAN LANGUAGE OF THE STATUTE, THE RULES OF CONSTRUCTION ENSHRINED IN PENNSYLVANIA LAW AND THE MANDATE OF THE SUPREME COURT OF PENNSYLVANIA TO LIBERALLY CONSTRUE THE UTPCPL TO EFFECTUATE ITS PURPOSE**

As set forth at length in Part I.A. above, in its Memorandum Opinion, this Court, based on the evidence presented at trial, found Abdoun to have committed numerous unfair and deceptive acts and practices in violation of the Fair Credit Extension Uniformity Act by demanding rent to which he had no entitlement, by asserting a right to possession of Debtor's home he did not have, and by and falsely accusing her of being a criminal trespasser using the police to intimidate the Debtor into vacating her home. *Marshall v Abdoun* 613 B.R. at 215.  The Court acknowledged Ms Marshall suffered an "ascertainable loss of money or property, real or personal", 73 P.S. §201-9.2(a), as a result of Abdoun's unlawful conduct and the Court found Debtor

suffered emotional damages from Abdoun's misconduct and found

Abdoun's conduct to be "egregious" and "clearly intentional and

wrongful".   However, the Court did not award Debtor any relief

for her emotional distress.   The Court held that emotional

distress damages are not included in the term "actual damages"

within the meaning of 73 P.S. §201.9.2.   *Marshall v Abdoun* 613

B.R. at 218-219.   In reaching that result, the Court did not

consider at all its discretion under 73 P.S. §201-9.2 to award

"additional relief as it deems necessary and proper" as a source

of authority to award emotional distress damages, whether or not

they are included in the actual damages as used in the Act.

In so holding the Court ignores the plain and express

language of 73 P.S. §201-9.2, the provisions of Pennsylvania

Statutory Construction Act of 1972, and the teachings of the

Pennsylvania Supreme and Superior Courts.   It also gave short

shrift to cases[12] from Pennsylvania permitting the award of

---

[12] The court indicates that the "vast weight of authority" of
district and bankruptcy court decisions in this district have
"almost uniformly found that emotional distress damages are not
included in the term 'actual damages' for purposes of the
UTPCPL".   As indicated in footnote 13 below there is a nearly
equal weight of authority of bankruptcy court cases on the other
side if the issue. But more importantly, the cases cited by the
court in its opinion are actually no authority for that
proposition at all. See Samuel-Bassett v. Kia Motors Am., Inc.,
357 F.3d 392, 400 (3d Cir. 2004).(District court rulings on
Pennsylvania law are not authoritative and must yield to rulings
of the state Supreme Court or, if none exist, consider decisions
of the state's intermediate appellate courts in predicting how

emotional distress damages pursuant to 73 P.S. §201-9.2 and cases

from other jurisdictions construing similar statutes to permit

provide for the award of emotional distress damages.[13]   These all

---

the state's highest court would rule.) The cases cited by the
Court reason that recovery for emotional distress damages does
not fall within the limitations of 73 P.S. §201-9.2, which only
recognizes as actual damages "any ascertainable loss of money or
property.' " *Marshall v Abdoun* 613 B.R. at 218-219, but the
opinions do so with little analysis, no reference to the decision
of the Pennsylvania Supreme Court in *Grimes*, which is the Supreme
Court decision the comes closest to shedding light on how the
Supreme Court would rule on the issue.  Nor do any ot the cited
decisions discuss the Supreme Court holding in *Monumental
Properties*, which requires a liberal construction of the UTPCPL
to accomplish its purpose, and none of them consider at all the
requirements of the Pennsylvania Statutory Construction Act in
construing the Pennsylvania Statute.

Instead, they ignore the plain language of the statute and the
fact that the General Assembly chose to use two different terms
for the standing requirement for asserting a claim under 73 P.S.
201-9.2 and the relief that can be afforded once the standing
requirement is met.  None of them attempt to read the application
of section 201-9.2 in conjunction with the statutory language of
the FCEUA.  Most importantly, none of them discuss in any way the
meaning and purpose of the provision of section 201-9.2 that
gives the court discretion to "provide additional relief as it
deems necessary or proper" and why that clause does not enable
the court to award "additional relief" in the form of emotional
distress damages, where it deems it necessary or proper to do so.

---

    [13]  See e.g. *In re Jungkurth*, 74 B.R. 323, 335-336 (Bankr.
E.D. Pa. 1987)(actual damages as used in §201-9.2 should include
"a liberal measure of the reasonable consequences of the act to
the wronged party"); *In re Littles* 90 B.R. at 679, 681-682
(awarded actual damages for emotional distress under 73 P.S.
§201-9.2(a) and exercised discretion under the Act to triple
them); *In re Andrews*, 78 B.R. 78, 84(E.D. Pa. 1987)(holding
emotional damages to constitute actual damages within the meaning
of §201-9.2, though finding Plaintiff had failed to prove such
damages); *Brunwasser v. Trans World Airlines, Inc.* 541 F.Supp
1338, 1346-1347(liberal construction of the UTPCLP mandated by

indicate that damages for emotional relief are included in the relief the court has the power to provide under 73 P.S.§201-9.2 for violation of the prohibitions contained in the Fair Credit Extension Uniformity Act.

Neither the UPTCPL nor the FCEUA contain a definition of "actual damages" or a formula for calculation of "actual damages" and the Pennsylvania Supreme Court has not to date interpreted the statutory term. *Agliori v. Metro. Life Ins. Co.*, 879 A.2d

---

Pa. Supreme Court requires one who has been damaged by UTPCPL violation be able to pursue damages for actual injury from the violation); *In re Belile* 209 B.R. 658,665(Bankr. E.D. Pa. 1997)(awarded Plaintiff modest actual damages under §201-9.2 for emotional distress); *Donahue v. NFS, Inc.*, 781 F. Supp. 188, 193-94 (W.D. N.Y. 1991) ($ 100 awarded for debtor's fear generating physical repercussions); *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182 (D. Del. 1991) (jury award of $ 15,000 remitted to $ 3,000; debtors suffered emotional distress, but court finds that much of it arose from personal circumstances of the debtors); *Crossley I, supra*, 90 B.R. at 685, 687, 697-98 ($ 1,000 actual damages awarded to a 70-year-old widow who was frightened into cashing her pension contribution to pay debt); *Bingham v. Collection Bureau, Inc.*, 505 F. Supp. 864, 875 (D. N.D. 1981) 1,000 actual damages awarded to the wife debtor whose (psychological injury was supported by expert testimony; $ 100 award to the husband debtor for loss of his wife's consortium)*; Dukes v. Firstrust Bank (In re Dukes)*, No. 91-15339DWS, Adv. No. 96-1004, 1997 Bankr. LEXIS 2221 (Bankr. E.D. Pa. Nov. 12, 1997); *Patterson v. Chrysler Fin. Co. (In re Patterson)*, 263 B.R. 82 (Bankr. E.D. Pa. 2001); *Roche v Fireside Chrysler-Plymouth, Mazda*, 235 Ill. App. 3d 70,82, 86  600 N.E. 2d 1218, 1225(1992)(under similar Illinois Consumer Fraud Act state appellate court award of $750.00 actual damages for "aggravation and inconvenience" when plaintiff had also established actual economic damages. )

315, 319(Pa. Super. 2005); *See Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 400 (3d Cir. 2004).   However, consistent with the melding of statutory and common law tort and contract remedies, the case law of Pennsylvania has sanctioned the application of several assessment schemes under the UTPCPL, *Agliori v. Metro. Life Ins. Co.*, 879 A.2d at 319, none of which expressly excludes emotional distress from the definition of actual damages.

Though the Pennsylvania Supreme Court has not ruled on the definition of the term "actual damages" as used in §201-9.2, its decision *in Grimes v Enter. Leasing Co. Of Phila.. LLC*, 629 Pa 457, 105 A.3d 1188 (2014) suggests that it would not define the term to be synonymous with "ascertainable loss."   In that case the Pennsylvania Supreme Court held that "the mere acquisition of counsel would not suffice to satisfy the 'ascertainable loss' standing requirement for bringing a cause of action under 73 P.S. §201-9.2.   *Grimes*,629 Pa 465.   In reaching its decision the court turned to the tools of statutory construction found in 1 Pa.C.S. §1921(a) and 1922(1).   It found that section 201-9.2 was not ambiguous and that following the plain language would not bring about an absurd result.   Following that plain language the court reasoned:

> Here, the operative statute initially provides
> for damages relative to "ascertainable
> loss[es]," then separately provides for awards
> of "costs and reasonable attorney fees." 73
> P.S. §201-9.2(a). This express authorization of
> attorney fees awards is "in addition to other
> relief provided in this section," which "other
> relief" encompasses the damages made available
> as compensation for ascertainable losses. The
> fees are derivative and consequential. Section
> 9.2(a)'s plain language makes it readily
> apparent that the General Assembly deemed
> ascertainable losses and attorneys' fees to be
> distinct items for redress.

*Grimes v. Enter. Leasing Co. of Phila., LLC*, 629 Pa. at 465-66,

105 A.3d at 1193.  Given this analysis, the Pennsylvania Supreme

Court would likely point to the use of different phrases to

describe the eligibility for relief under §201-9.2, i.e what is

necessary to establish a private right of action under §201-9.2,

and the measure of relief available once the standing requirement

is met, as evidence that the General Assembly did not intend the

two phrases to be synonymous.  Similarly, it is also likely the

Pennsylvania Supreme Court would point to the separate sentence

in Section 201- 9.2 providing that the court "may provide such

additional relief as it deems necessary or proper" as evidence

that the legislature did not intend for the additional relief the

court is empowered to provide to be limited either by the

definition of "ascertainable damages" or "actual damages".

Instead, *Grimes* suggests this independent clause must be

construed to provide the court with authority to provide relief
not encompassed by either of the concept of "actual damages" or
"ascertainable loss". *Id.* At 467; see *Agliori v. Metro. Life Ins.
Co.*, 879 A.2d at 319("Consistent with the melding of statutory
and common law tort and contract remedies, our case law has
sanctioned the application of several damage assessment schemes
under the UTPCPL."); *Metz v. Quaker Highlands, Inc.*, 714 A.2d 447
(Pa. Super. 1998)( prevailing plaintiff awarded rescission of a
sales contract for real property as well as treble damages under
UTPCPL).  As the Third Circuit Court of Appeals observed in *In re
Smith* in determining the types of conduct to which it is
available to remedy section 201-9.2:

> appears merely to provide a private remedy for
> all violations of section 3 which might
> otherwise escape remedy because they do not
> affect the public interest and would not
> therefore be subject to enforcement by the
> Attorney General under section 4 of the UDAP.

*In re Smith*, 866 F.2d 576, 583 (3d Cir., 1989).  The narrow
construction of the provision utilized by the Court in its
Opinion does not permit it to serve the purpose envisioned by the
Third Circuit, or by the plain language of the statute.

The Fair Credit Extension Uniformity Act was enacted
March 28, 2000, effective June 26, 2000, *inter alia* , to deter
creditors from engaging in conduct "the natural consequence of

which is to harass, oppress, or abuse any person in connection
with the collection of a debt." See 73 P.S. §2270.4(b)(4). The
Act and the regulations that preceded it, undoubtedly intended
to supplement the tort remedies available for abusive debt
collection practices. See *In re Littles*, 90 B.R. at 680
(inadequacy of the tort of intentional infliction of mental
distress to prevent abusive collection practices was undoubtedly
motivation behind enactment of such measures as the FDCPA and the
DCPTR). The present provisions of the FCEUA had their origins in
regulations that were promulgated by the Pennsylvania Department
of Justice, Bureau of Consumer Protection under the authority
conferred upon it by 73 P.S. §201-3.1 of the Unfair Trade
Practices and Consumer Protection Law, Act of December 17, 1968,
P.L. 1224, as amended, 73 P.S. § 201-1 et seq. *Pa. Retailers'
Assoc., Reliable, Inc. v. Lazin*, 57 Pa. Commw. 232, 234, 426 A.2d
712, 714-15 (1981); See *In re Jungkurth*, 74 B.R. 323, 335-336.
(Bankr. E.D. Pa. 1987). The Debt Collection Trade Practices
Regulations (DCPTR), as they were known, were codified at 37 Pa.
Code § 303.1 et seq. *Id*. The regulations provided that it shall
be an unfair or deceptive act or practice for a debt collector to
engage in many activities described in Section 303.3 of the
regulations, 37 Pa. Code § 303.3. *Pa. Retailers' Assos.,
Reliable, Inc. v. Lazin*, 57 Pa. Commw. 232, 234, 426 A.2d 714-15;

See *In re Jungkurth*, 74 B.R. at 335-336.  The regulations, and
the FCEUA that followed, largely embodied the provisions of the
Fair Debt Collection Practices Act and extended the applicability
of many of those provisions to creditors who were not covered by
the FDCPA.

The FCEUA replaced the Debt Collection Trade Practices
Regulations which were repealed by the passage of the FCEUA. 73
P.S. §2270.6.  "The Act establishes what shall be considered
unfair methods of competition and unfair or deceptive practices
with regard to the collection of debts."  73 P.S. §2270.2.  The
FECUA expressly incorporates the provisions of the federal Fair
Debt Collection Practice Act (FDCPA), 15 U.S.C. §1692 et seq.,
and makes any violation by a debt collector of the provisions of
that Act "an unfair or deceptive debt collection act or practice
under [the FCEUA]." 73 P.S. §2270.4(a).

In addition the FCEUA goes beyond the FDCPA by
prohibiting certain conduct by creditors, who are excluded from
the coverage of the FDCPA.  The FCEUA defines certain conduct as
"an unfair or deceptive debt collection act or practice under
this act" if perpetrated by a creditor attempting to collect a
debt.  73 P.S. §2270.4(b).  Included in subsections 4,5 and 6 of
§2270.4(b), part of the list of conduct prohibited by a creditor

in connection with the collection of a debt, is the following

conduct made a violation of the act:

> (4) any conduct the natural consequence of which
> is to **harass, oppress** or **abuse** any person in
> connection with the collection of a debt.
> (emphasis added) This includes but is not
> limited to:

> (4)(i) the use or threat of use of violence or
> other criminal means to the physical person,
> reputation or property of any person;

> 4(ii) the use of obscene or profane language or
> language the natural consequence of which is to
> abuse the hearer or reader;

> (4)(iii) the publication of a list of consumers
> who allegedly refuse to pay debts ....;

> (4)(iv) the advertisement for sale of any debt
> to coerce payment of the debt;

> (5) the use of any false, deceptive or
> misleading representation in connection with
> the collection of a debt ...;

> (5)(i) the false representation or implication
> that the creditor is vouched for, bonded by or
> affiliated with the United States or any state,
> including the use of any badge, uniform or
> facsimile thereof;
>                     ...
> (5)(iv) the representation or implication that
> nonpayment of any debt will result in arrest or
imprisonment of any person or the seizure, attachment or sale of
any property of any person unless such action is lawful and the
creditor intenss to take such action;

> (5)(v) The threat to take any action that
> cannot legally be taken or that is not intended
> to be taken;
> (5)(vii) The false representation or
> implication that the consumer committed any

crime or other conduct to disgrace the
consumer;

                    ...

(5)(ix) The use or distribution of any written
communication which simulates or is falsely
represented to be a document authorized, issued
or approved by any court, official or agency of
the United States or any state or which creates
a false impression as to its source,
authorization or approval;

(6)The use by a creditor of "unfair or
unconscionable means to collect or attempt to
collect any debt;"

                    ...

(6)(vi) taking or threatening to take any non-
judicial action to effect dispossession or
disablement of property if:

 "(A) there is no present right to possession
...."
 (B) "there is no present intention to take
 possession of the property possession of the
 property" or
 (C) the property is exempt by law from such
displacement.

In short, §2270.4 subsections (b)(4)-(6) prohibit

precisely the kind of outrageous conduct by a creditor in

connection with the collection of a debt that could form the

bases for an action for the intentional infliction of emotional

distress, if the other elements of that tort are present.  See

illustrations, §46, Restatement (Second) of Torts (1965).

    The enforcement and penalty provisions of the FCEUA are

found in §2270.5.  Section 2270.5(a) provides that any creditor

or debt collector who engages in an unfair or deceptive practice

under the FCEUA shall have committed a violation of the Unfair
Trade Practices and Consumer Protection Law.  The consequence of
this is two fold, first it retains the prohibition of certain
debt collection practices as part of the overall scheme of the
Consumer Protection law and more specifically it provides one
aggrieved by a violation of the FCEUA with remedies as provided
in 73 P.S. §201-9.2 of the UTPCPL.

Significantly, section 2270.5(b), creates a two year
statute of limitations for such claims.  This is significant in
that 2 years is double the time in which actions can be brought
under the FDCPA for violations of the federal law. 15 U.S.C.
§1692k(d).  At the same time, the two year period is only 1/3 of
the time in which actions for violation of the UTPCPL can usually
be brought,  *Gabriel v O'Hara*, 368 Pa Super. 383,398; 534 A. 2d
488,496 (Pa. Super 1986), and more in line with the statute of
limitations in Pennsylvania for intentional torts, for damages to
the person and torts arising out of fraud and deceit. See 42
Pa.C.S. §5524(7).

Finally, 2270.5(c) provides that "Remedies available for
violation of [the FCEUA] and the [FDCPA] shall not be cumulative
and debt collectors who violate the [FCEUA] and the [FDCPA] shall
not incur cumulative penalties."  There is no limitation in the
FCEUA on the remedies available for violations by creditors.

-39-

The remedies available to individuals for violations of the UFTPCPL are set forth in 73 P.S. 201-9.2 which provides as follows:

> (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and **thereby suffers any ascertainable loss of money or property, real or personal**, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action **to recover actual damages or** one hundred dollars ($ 100), whichever **is greater.** The court **may, in its discretion, award up to three times the actual damages sustained,** but not less than one hundred dollars ($ 100), **and may provide such additional relief as it deems necessary or proper.** The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2 (emphasis added).

The Court in determining that section 201-9.2 does not permit the award of damages for emotional distress, essentially defined the term "actual damages" as used in §201-9.2 to mean "ascertainable loss of money or property, real or personal" and completely read out of the statute the last clause of the penultimate sentence of the section which provides that the court "may provide such additional relief as it deems necessary or proper."  In addition, the Court disregards the fact that the legislature chose to use separate and distinct terms to define who was entitled to relief under §201-9.2 and the relief one who

-40-

"suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act" can pursue or may be able to receive at the discretion of the court. There is nothing in the statute or in applicable Pennsylvania law that permits such a reading of the statue.

The Statutory Construction Act of 1972, provides in part that "[e]very statute shall be construed, if possible, to give effect to all its provisions" and that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(a), (b). *Pa. Retailers' Assos., Reliable, Inc. v. Lazin*, 57 Pa. Commw. at 239, 426 A.2d a, 717. 1 Pa.C.S. §1921(a) further provides that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly and goes on to provide that every statute shall be construed, if possible to give effect to all of its provisions.

The UTPCPL and the FCEUA are remedial statutes intended to thwart fraud and to benefit "the public at large by eradicating, among other things, 'unfair and deceptive business practices" and in the case of the FCEUA, debt collection practices. *Commonwealth v. Monumental Properties, Inc*., 459 Pa.

-41-

450, 457-62, 329 A.2d 812, 815-17 (1974), on remand, 26 Pa. Commonwealth Ct. 399, 365 A.2d 442 (1976). "Since the Consumer Protection Law was in relevant part designed to thwart fraud ... it is to be construed liberally to effect its object of preventing unfair or deceptive practices." *Id.* at 817.  The narrow definition of "actual damages" adopted by the Court in construing §201-9.2 runs counter not only to the "common and approved usage" of the term "actual damages", see 1 Pa.C.S. §1903(a), but also runs counter to the remedial purpose of the UTPCPL and the FCEUA.  *Agliori v Metro Life Ins. Co.* 879 A.2d 315, 319 (Pa. Super. 2005)(Beck, J.)(Pa Supreme and Superior Courts "have stressed time and again the deterrence function of the [UTPCPL].")

As pointed out above, much of the conduct creditors are prohibited from engaging in by the statute, in the collection of their debts, is conduct intended and likely to cause significant emotional distress in the person to whom the conduct is directed. Indeed it is the intention of the conduct to produce sufficient emotional distress to cause the victim to pay a debt that he or she may not owe or in excess of what is owed.  Denying the victim of such unfair, deceptive and outrageous collection acts, as are defined in the statute, the ability to recover the damages they suffer from such conduct runs counter to the remedial purpose of

the law.  See *Agliori v Metro Life Ins. Co.* 879 A.2d at 319(failure to require defendant to fully compensate consumer for the harm suffered by entering into a fraudulently induced contract would result in unacceptable evisceration of the statutory goals of the UTPCPL).

The rules of statutory construction further provides that since the words used in section 201-9.2 are clear and unambiguous there is no basis for some of them to be given a meaning that contradicts their ordinary usage.  In ordinary usage, especially in the context of statutes designed to prevent the types of harms for which Ms Marshall seeks redress, the term "actual damages" is not limited to the "ascertainable loss of money or property, real or personal" but includes emotional distress damages.  See e.g *Lansaw v. Zokaites* (*In re Lansaw*) 853 F. 3d 657(3d Cir 2017)(emotional distress damages are recoverable as "actual damages" under 11 U.S.C. §362(k)(1)); *Crossley v Leiberman*, 90 B.R. 682, 691-692 (E.D. Pa. 1988) (emotional distress damages constitute "actual damages" within the plain meaning of §15 U.S.C. §1692k(a)(1) of the FDCPA).

The precise arguments recited by the Third Circuit in *Lansaw* with respect to actual damages for stay violations, which the Court recognizes in footnote 18 of its Opinion, *Marshall v Abdoun*, 613 B.R. at 218, dictate that the term "actual damages"

-43-

be construed to include emotional distress damages resulting from violations of the FCEUA.  Like the automatic stay, the provisions of the FCEUA cited above and violated by Abdoun, are expressly designed to protect a Debtor within the meaning of the Act from "non-pecuniary emotional harm such as harassment and pressure from creditor collection efforts."  Lansaw v Zokaites, (In re Lansaw), 873 F. 3d 657, 667-68(3d Cir. 2017).  73 P.S. §2270.4(b)(4) expressly prohibits creditors from engaging in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Because the express language of the statute reflects this, it is not necessary to resort to legislative history to discern the intent of the law.  See 1 Pa. C.S. §1921(a), (b) and (c)1-3 and (6).

Similarly, the rational used to determine that the term "actual damages" used in the FDCPA encompasses distress damages also applies to section 201-9.2 when used to enforce the provisions of the FCEUA.  Like the FDCPA, the enactment of the FCEUA resulted from "the abundant evidence of the use abusive, deceptive and unfair debt collection practices by many debt collectors [and creditors]" and recognition that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to

-44-

the loss of jobs and to invasions of privacy." Crossley v

Liberman, 90 B.R. at 692 (quoting from 15 U.S.C. §1692(a)). It is

plain from the provisions of the FCEUA that it is intended to

prevent the same evils that are addressed by the FDCPA

perpetrated not just by debt collectors, but by creditors as

well. That section 2270.5(c) of the FCEUA provides for non-

cumulative remedies evidences the General Assemblis intent that

debt collectors not be penalized twice for the same conduct and

the expectation of the General Assembly that the relief obtained

under the two statutory schemes for conduct by debt collectors

covered by both statutes will be largely the same.

Finally, the rules of construction require a court to

give effect to the entire statute. By concluding that it is

precluded from providing relief to Ms Marshall for the emotional

distress damages she suffered, because they are not "actual

damages", the court is rendering the statutory provision that

enables the court to "provide such additional relief as it deems

necessary and proper" superfluous and without effect. This the

court cannot do. 1 Pa. C.S. §1921(a). See  *Grimes v Enter.*

*Leasing Co. Of Phila.. LLC*, 629 Pa 467, 105 A.3d 1194.

## CONCLUSION

For the reason set forth above, Plaintiff prays this court to reconsider and vacate those portions of its opinion in which it declines to deny Abdoun's proof of claim and fails to award Ms Marshall damages for her emotional distress.

Plaintiff prays this court to amend its order to disallow  Abdoun's proof of claim in its entirety, finding the deed upon which he bases the claim to be a nullity under applicable state law and finding further that, in the absence of a valid deed, he has no claim against debtor at all.[14]

Finally, Plaintiff prays this court to award her $10,000.00 in emotional distress damages, either as a remedy pursuant to 73 P.S. §201.9.2(a) for damages suffered by Debtor as the result of Abdoun's conduct in violation of the FCEUA, or as damages for his intentional infliction upon her of severe emotional distress, pursuant to §46 of the Restatement (Second) of Torts.

---

[14] If the transfer represented by the deed is avoided pursuant to 11 U.S.C. §548, and the property recovered pursuant to §550(a)(1), Abdoun could be entitled to a lien in an amount between $0.00 and approximately $9,000.00, pursuant to 11 U.S.C. §550(e) for the reasons set forth in Plaintiff's original findings of fact and conclusions of law. In such a case, Plaintiff's distress damages could be applied as a recoupment against the claim along with the damages the court previously awarded Plaintiff.

Respectfully submitted,

/s/Irwin Trauss
Irwin Trauss, Esquire
Attorney for Plaintiff
Philadelphia Legal Assistance
718 Arch Street, Suite 300N
Philadelphia, PA 19106
215 981 3811    215 981 3870(fax)
ltrauss@philalegal.org