**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | Chapter 13 |
| | : | |
| KATHYLENE A. MARSHALL, | : | |
| | : | **Bankruptcy No. 15-18921-AMC** |
| DEBTOR | : | |
| _____ | : | |
| | : | |
| KATHYLENE A. MARSHALL, | : | |
| | : | |
| PLAINTIFF | : | |
| | : | **Adv. Proc. No. 17-00088-AMC** |
| V. | : | |
| | : | |
| YASIR A. ABDOUN, | : | |
| | : | |
| DEFENDANT | : | |
| _____ | : | |

Ashely M. Chan, United States Bankruptcy Judge

**OPINION**

## I.    INTRODUCTION

In March 2017, the plaintiff-debtor, Kathylene Marshall ("Debtor"), initiated this

adversary proceeding seeking, *inter alia,* to avoid a pre-petition tax sale of her home located at

715 S. Cobbs Creek Parkway, Philadelphia, PA ("Property") pursuant to 11 U.S.C. § 548, and to

recover damages under Pennsylvania's Unfair Trade Practices and Consumer Protection Law

("UTPCPL"), 73 P.S. § 201-9.2, for actual costs and emotional distress caused by the purchaser

of the Property—and defendant in this adversary proceeding—Yasir Abdoun ("Abdoun")

wrongfully attempting to obtain possession of the Property ("Adversary Proceeding"). On

February 11, 2020, after a trial, the Court entered an order finding that the pre-petition tax sale

could not be avoided under 11 U.S.C. § 548, and awarding Debtor actual damages under the

UTPCPL on account of Abdoun's unlawful actions attempting to dispossess her from the

1

Property ("Marshall Adversary Judgment"). Now, the Debtor moves to have the Court reconsider

and vacate a portion of the Marshall Adversary Judgment pursuant to Fed. R. Bankr. P. 9023.

("Reconsideration Motion"). Ultimately, for the reasons described below, the Court denies the

Reconsideration Motion.

## II.      FACTUAL & PROCEDURAL BACKGROUND

Because the facts and circumstances underlying this matter are fully set forth in the

opinion accompanying the Marshall Adversary Judgment, *Marshall v. Abdoun (In re Marshall)*,

613 B.R. 194 (Bankr. E.D. Pa. 2020) ("Opinion"), which is hereinafter incorporated by

reference, only certain abbreviated facts relevant to the Reconsideration Motion will be restated.

In February 2015, the City of Philadelphia ("City") sold the Debtor's Property, which was owned

by the Debtor and her estranged husband, at a sheriff's sale to Abdoun on account of delinquent

real estate taxes. *Marshall*, 613 B.R. at 202-03. Prior to the February 2015 sheriff's sale, the

Philadelphia County Court of Common Pleas ("State Court") failed to hold a hearing

("Hearing") in compliance with Pennsylvania's Municipal Claims and Tax Lien Act

("MCTLA"), 53 P.S. § 7283(a). *Id.*

Prior to the expiration of the statutory redemption period,[1] Abdoun impermissibly

attempted to collect rent and effectuate an eviction of the Debtor from the Property on numerous

occasions. *Id.* at 204-05. His actions caused the Debtor to experience severe emotional distress,

---

[1]      Under Pennsylvania law, pursuant to the Municipal Claims and Tax Lien Act, the owner of a property sold
under a tax or municipal claim, his assignees, or any party whose lien or estate has been discharged retains the right
to redeem the property within nine months of acknowledgement of the sheriff's deed issued in connection with the
sale provided that the property was continuously occupied by the same person or family unit as a residence for
ninety (90) days prior to the sale and continued to be so occupied on the date of acknowledgement of the sheriff's
deed. 52 P.S. § 7293(a), (c); *In re Pittman*, 549 BR. 614, 616-17 (Bankr. E.D. Pa. 2016). During the allowed
redemption period, the owner may continue in possession of the property and the purchaser merely holds defeasible
title in the property until the redemption period expires. *In re Pittman*, 549 B.R. at 620-24 (discussing numerous
Pennsylvania cases finding owner retains possession of the property during the redemption period).

triggered in large part by a history of police contact at the Property due to past incidents of

domestic abuse by her husband. *Id.* at 204.

On December 14, 2015, the Debtor, through counsel, filed a voluntary petition under

chapter 13 of the Bankruptcy Code. Case No. 15-18921 ECF No. ("ECF") 1. On March 27,

2017, the Debtor initiated the instant Adversary Proceeding by filing a complaint against Abdoun

seeking to avoid the transfer of the Property in its entirety as a constructively fraudulent transfer

pursuant to 11 U.S.C. § 548(a)(1)(B) based upon the State Court's failure to hold a Hearing in

advance of the sale; to recover the Property pursuant to 11 U.S.C. § 550(a)(1); and determine the

extent and validity of Abdoun's lien on the Property pursuant to 11 U.S.C. § 550(e). Case No.

17-88 ECF 1; Compl. ¶¶ 1, 33-42, 54-57. Additionally, the Debtor sought to recover damages for

alleged violations of Pennsylvania's Fair Credit Extension and Uniformity Act ("FCEUA"), 73

P.S. § 2270.1 et seq., as enforced through the UTPCPL. Compl. ¶¶ 43-45, 47-53. Alternatively,

the Debtor sought to have the Court disallow pursuant to Fed. R. Bankr. P. 3001(c)(2)(D)(i) the

secured claim Abdoun had filed in the bankruptcy proceeding on the basis that his proof of

claim, which was based upon his purchase of the Property at the sheriff's sale, contained "no

support for an allowed secured claim in any amount."[2] Compl. ¶¶ 62, 63; *Marshall*, at 613 B.R.

at 205. In the event Abdoun's claim was not disallowed in its entirety, the Debtor sought to have

the Court set the redemption amount at $19,000, the alleged value of the Property, according to

the Debtor, as of the petition date, and reclassify any excess amount of Abdoun's claim as a

general unsecured claim pursuant to 11 U.S.C. § 506(a). Compl. at ¶ 64.

---

[2] Generally, third-party purchasers of properties sold at a sheriff's sale on account of delinquent real estate taxes hold a claim against a debtor in bankruptcy secured against the subject property for repayment of the amount necessary to redeem the sold property under Pennsylvania's MCTLA. *See In re Pittman*, 549 B.R. 614, 628 (Bankr. E.D. Pa. 2016).

At the outset of the April 2019 trial ("Trial"), Debtor notified the Court and Abdoun that he intended to amend the pleadings to conform to the evidence at Trial to include a claim for willful violation of the automatic stay pursuant to 11 U.S.C. § 362(k). Trial Tr. 6:19-7:10, April 17, 2019 ("Trial Tr."). After the Trial, and after the parties filed proposed findings of fact and conclusions of law, which included discussion of, *inter alia,* the § 362(k) claim, the Court entered the Marshall Adversary Judgment, awarding the Debtor $300 pursuant to the UTPCPL, 73 P.S. § 201-9.2, representing one-and-a-half times the amount of her actual damages of $200 sustained as a result of Abdoun's FCEUA violations of seeking rent and attempting to evict the Debtor from the Property prior to the expiration of the statutory redemption period. *Marshall*, 613 B.R. at 220; Case No. 17-88 ECF 24 Pl. Proposed Concl. of Law ¶¶ 40-42, ECF 27 Def. Proposed Concl. of Law ¶ 12. However, the Court ultimately concluded, as reflected in the Marshall Adversary Judgment and supporting Opinion, that the sale of the Property was not a constructively fraudulent transfer subject to avoidance under 11 U.S.C. § 548(a)(1)(B) because the Debtor "failed to produce any evidence that would support a finding that the tax sale price would have been higher if the State Court had held the Hearing before it issued the Decree permitting the Property to be sold." *Marshall,* 613 B.R. at 212 (citing *Ankrah v. HSBC Bank USA, N.A. (In re Ankrah)*, 602 B.R. 286, 291 (Bankr. D. N.J. 2019); *Thorian v. Baro Enters., LLC (In re Thorian)*, 387 B.R. 50, 65 (Bankr. D. Idaho 2008)). Subsequently, on February 24, 2020, the Debtor filed the Reconsideration Motion. Case No. 17-88 ECF 40. At the Court's request, Debtor filed a supplemental brief in support of the Reconsideration Motion on December 28, 2020, and Abdoun filed a supplemental response brief on January 25, 2021. *Id.* at ECF 58, 59. Also at the Court's request, Debtor filed an additional supplemental brief on May 7, 2020. *Id.* at ECF 72.

## III.    DISCUSSION

The Debtor argues in the Reconsideration Motion that the Court erred by: (1) overlooking evidence supporting the "inference" that no sheriff's sale would have occurred had the Hearing required by 53 P.S. § 7283(a) been held prior to the issuance of the decree authorizing the sale of the Property ("Decree"); (2) failing to consider the invalidity of the Decree, which deprived the State Court of jurisdiction to conduct the sheriff's sale, thus rendering Abdoun's deed a legal nullity; (3) measuring the "reasonably equivalent value" of the Property for purposes of 11 U.S.C. § 548 against the price that would have been received had the sale of the Property complied with applicable state law governing forced sales of property for delinquent real estate taxes instead of against its fair market value; (4) failing to award emotional distress damages under 73 P.S. § 201-9.2, which permits the Court to provide such "additional relief as it deems necessary or proper"; and (5) failing to award damages for emotional distress based on an unpled claim for intentional infliction of emotional distress in tort. Mot. for Recons. ¶¶ 3-24; Case No. 17-88 ECF 58 Suppl. Br. in Supp. of Pl's. Mot. to Recon. at 16-22. For the reasons described below, the Court concludes that the Debtor has not satisfied the high burden required to justify vacating and reconsidering the Marshall Adversary Judgment.

### A. Applicable Legal Principles

Federal Rule of Bankruptcy Procedure 9023 ("Rule 9023") provides that "Rule 59 F.R.Civ.P. applies in cases under the [Bankruptcy] Code." Motions for reconsideration timely filed fourteen days after entry of judgment, as the instant Reconsideration Motion was, are treated as motions to alter or amend judgment under Fed. R. Civ. P. 59(e) ("Rule 59"). *In re Stuart*, 402 B.R. 111, 119 (Bankr. E.D. Pa. 2009). A motion for reconsideration under Rule 59(e) may only be granted if the moving party demonstrates at least one of the following grounds: (1)

5

an intervening change in controlling law; (2) new evidence not previously available; or (3) the

need to correct a clear error of law or fact or prevent manifest injustice. *Id.* at 120. The movant

bears a high burden to demonstrate that grounds exist justifying reconsidering final judgment. *In

re Sellers*, 555 BR. 479, 481-82 (Bankr. E.D. Pa. 2016) (citing *ABS Brokerage Servs., LLC v.

Penson Fin. Servs., Inc.*, Civ. No. 09–4590 (DRD), 2010 WL 3257992, at *5 (D. N.J. Aug. 16,

2010)).

 A motion for reconsideration is an extraordinary remedy that should be granted sparingly.

*In re Stuart*, 402 B.R. at 120. "It is not to be used as a means to reargue matters already argued

and disposed of or as an attempt to relitigate a point of disagreement between the Court and the

litigant." *Id.* Additionally, "[a] party cannot invoke Rule 59(e) to raise arguments or evidence

that could have been raised prior to judgment…That is, Rule 59(e) is 'aimed at *re*consideration,

not initial consideration,' and thus a party may not rely on Rule 59(e) to raise an argument that

could and should have been made before judgment issued." *Est. of Scotty Ray Sisk v.

Manzanares,* 270 F. Supp. 2d 1265, 1279-80 (D. Kan. 2003) (citing *Steele v. Young*, 11 F.3d

1518, 1520 n.1 (10th Cir. 1993); 11 Charles Alan Wright et al., Federal Practice & Procedure §

2810.1 (2d ed. 1995); *United States ex rel. Noyes v. Kimberly Constr., Inc.*, 43 Fed. Appx. 283,

286-87 (10th Cir. 2002)). "Ultimately, a motion for reconsideration is not properly grounded on

a request that a court rethink a decision already made, rightly or wrongly, and may not be used to

argue new facts or issues that inexcusably were not presented to the court in the matter

previously decided, nor to reargue matters already argued." *In re Marinari*, 596 B.R. 809, 819

(Bankr. E.D. Pa. 2019) (citing *Ironworks Patents, LLC v. Apple, Inc.*, 255 F. Supp. 3d 513, 521

(D. Del. 2017); *In re Leahey*, Case No.: 11–11906–ABA, 2017 WL 4286136, at *2 (Bankr. D.

N.J. Sept. 26, 2017); *Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454, 472 (M.D. Pa. 2016);

*Einhorn v. Kaleck Bros.*, 713 F. Supp. 2d 417, 427 (D. N.J. 2010)).

Since the Debtor does not identify any intervening change in controlling law, any new

evidence not previously available, or any manifest injustice[3] which would result from failing to

reconsider or vacate the Marshall Adversary Judgment, the discussion is properly focused on

whether the Court must correct a clear error of law or fact. To demonstrate a clear error of law or

fact, the movant must show that the court overlooked a factual or legal issue which may have

altered the previous disposition, "such as when dispositive factual matters or controlling

decisions of law were brought to the court's attention, but not considered." *Einhorn,* 713 F.

Supp. 2d at 426. The court should "only entertain a motion to reconsider if the alleged

overlooked controlling decision of law or dispositive factual matter was of a nature that, if

considered by the Court, might reasonably have resulted in a different conclusion." *In re Leahey,*

2017 WL 4286136, at *2 (quoting *In re Scotto-DiClemente*, 463 B.R. 308, 310 (Bankr. D.N.J.

2012)).

### B. The Court Did Not Overlook Evidence Supporting the "Inference" That No Sheriff's Sale Would Have Occurred Had the Hearing Been Held Prior to the Issuance of the Decree Authorizing the Sale of the Property.

In support of her position that the Court overlooked evidence that no sheriff's sale would

have occurred had the Hearing been held, the Debtor argues that her testimony from the Trial, as

reflected on page 59 line 17 through page 61 line 8 of the transcript ("Testimony"), suggests that

---

[3]      While there is no judicial consensus regarding the meaning of the term "manifestly unjust," several courts
have applied the Black's Law Dictionary definition stating that "'manifest injustice' is 'an error in the trial court that
is direct, obvious, and observable.'" *Von Kahle v. Roemmele (In re Roemmele)*, 466 B.R. 706, 712 (Bankr. E.D. Pa.
2012). Courts may only grant reconsideration requests based on manifest injustice if the error "is apparent to the
point of being indisputable" or if the record presented is "so patently unfair and tainted that the error is manifestly
clear to all who view it." *Id.* (citing *Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, No. 09–4158–SAC,
2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011); *Conway v. A.I. duPont Hosp. for Children*, Civ. Act. No. 04–4862,
2009 WL 1492178, at *6 n.8 (E.D. Pa. May 26, 2009)). A movant's mere dissatisfaction with the outcome does not
constitute "manifest injustice." *Degussa v. Materia, Inc.,* 305 F. Supp. 3d 563, 575 (D. Del. 2018).

(1) no sale would have been scheduled if a Hearing had been held because the Debtor would have attended the Hearing and addressed her delinquent real estate taxes, as she once attempted to do in 2013, and (2) had a Hearing been held, the State Court would not have authorized a sale due to the failure of the City to properly serve the rule returnable directing the Debtor to show cause why the Property should not be sold ("Rule"). Mot. for Recons. ¶ 3 (citing Trial Tr. at 59:17–61:8). The Court did not overlook the Testimony, but rather, found that it does not sufficiently support the inference that, as a matter of fact, no sale would have been authorized if a Hearing had occurred.

Debtor's vague Testimony reflects that in 2013, when the Debtor received a letter regarding the Property's real estate tax delinquency, the Debtor applied for assistance from an organization called "the People's Help Fund" and, thereafter, mistakenly believed that the City had stopped its collection efforts. Trial Tr. 60:18–61:8. The Debtor appears to suggest that this Testimony demonstrates that if the Hearing had been held, the Property would not have been sold at sheriff's sale because the Debtor would have addressed her tax delinquency. While this Testimony suggests Debtor may have certainly *attempted* to address her tax delinquency if a Hearing had been held, it does no more than that, reflecting only that the Debtor once, apparently unsuccessfully, applied for a relief program. In fact, the Testimony leaves the Court with questions surrounding the Debtor's ability to successfully navigate applying for another assistance or relief program, especially given that it appears she had some difficulty obtaining assistance in 2013; her ability to navigate successfully applying for a payment plan with the City or to meet the City's requirements for getting into a payment arrangement; and the Debtor's ability to resolve her real estate tax delinquency on terms acceptable to the City.[4] Ultimately, the

---

[4]     While the Court recognizes that the Debtor could have possibly qualified for an owner-occupied payment agreement provided for under Philadelphia Code § 19-1305 had she successfully applied, no evidence regarding the

Testimony gives the Court no basis to conclude as a matter of fact that if a Hearing had been held, the Debtor would have successfully made arrangements to address her real estate tax delinquency to prevent the authorization of a sheriff's sale.

The Testimony also reflects that Debtor had been unaware that the Property was "up for sheriff's sale." Trial Tr. 59:17-19, 61:5-8. The Debtor appears to suggest that this Testimony demonstrates that service of the Rule was not proper. However, that the Debtor did not know about the sheriff's sale, without more, does not permit the Court to conclude either that the City as a matter of fact did not properly serve the Rule "in the manner provided in this act for the service of writs of scire facias to obtain judgments upon tax and municipal claims," or that had a Hearing been held, the State Court would have denied the City's petition seeking authorization to sell the Property ("City's Petition") due to the City's alleged failure to properly serve the Rule. *See* 53 P.S. § 7283(a).

Lack of actual notice of a sheriff's sale, petition, or rule returnable, standing alone, does not render service of a rule deficient for purposes of authorizing a tax sale, or setting one aside, so long as the City complied with the service requirements of the MCTLA. *See City of Philadelphia v. Jones*, 221 A.3d 737, 745-46 (Pa. Commw. Ct. 2019); *City of Philadelphia v. Reed-Williams*, No. 863 C.D. 2017, 2018 WL 3131155, at *7-9 (Pa. Commw. Ct. June 27, 2018); *City of Philadelphia v. Burrell*, No. 266 C.D. 2017, 2017 WL 5243553, at *2-3 (Pa. Commw. Ct. Nov. 13, 2017).

---

Debtor's income and expenses in the days and weeks leading up to the authorization of the sale of the Property was offered at Trial, besides her testimony that in November 2018 she began receiving disability payments from an unspecified source. Trial Tr. at 62:7-8. While the City appears to commonly allow certain low-income taxpayers to elect an agreement with no monthly payment, it may nonetheless deny a taxpayer's application for a payment agreement for good cause. *See* Philadelphia Code § 19-1305(2)(d).

The alleged overlooked Testimony referenced in the Motion simply does not address the manner of service of the Rule and the Debtor has not otherwise offered evidence substantiating her position that service of the Rule was improper. Ultimately, that the Debtor did not know about the sale simply does not give the Court a basis to conclude as a matter of fact that the City did not properly serve the Rule or that had a Hearing been held, the State Court would have denied the City's Petition for lack of proper service of the Rule.[5]

### C.  The Decree's Purported Invalidity Does Not Permit the Court to Vacate and Reconsider the Marshall Adversary Judgment.

In the Reconsideration Motion's second claim of error, the Debtor argues that the Court overlooked that Pennsylvania law dictates that the State Court's failure to conduct the Hearing, as expressly required by the MCTLA, prior to the sale of the Debtor's Property, deprived the State Court of jurisdiction to effectuate the sale, thereby nullifying Abdoun's deed upon which he based his secured claim. *See* Case No. 17-88 ECF 58 Suppl. Br. in Supp. of Pl's. Mot. to Recon. at 3 (citing *City of Phila. v. Est. of Labrosciano*, 202 A.3d 145,155 (Pa. Commw. Ct. 2017)). The Court specifically found in the Opinion accompanying the Marshall Adversary Judgment that:

> the tax sale failed to comply with § 7283(a) of the MCTLA, because the State Court failed to hold the required Hearing before it issued the Decree permitting the Property to be sold. Based upon this irregularity during the tax sale process, the presumption established under *BFP* and related cases, that the sale price received at a tax sale is the reasonably equivalent value of the Property, does not apply.

*Marshall*, 613 B.R. at 211.

---

[5]     The process for executing a sale for delinquent taxes is set forth in the Opinion. *See Marshall*, 613 B.R. at 210 n.8.

The Court recognized, in the context of evaluating an 11 U.S.C. § 548(a)(1)(B) claim, that the State Court's failure to hold a Hearing prior to issuing the Decree, which rendered the Decree invalid, constituted an "irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law," thereby depriving the tax sale price "of its conclusive force under § 548." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545-46 (1994).

However, because the Debtor almost exclusively focused on the § 548 count and FCEUA/UTPCPL count at Trial, the Court ultimately did not address the issue of whether the State Court's failure to hold a hearing, as required under § 7283(a) of the MCTLA, would render Abdoun's deed a nullity for purposes of disallowing his claim as a secured claim independent of the § 548 count. Ultimately, even if the Court construes the complaint and other filings in this Adversary Proceeding as raising the potential voidness of the Decree as a basis for disallowing Abdoun's claim as a secured claim independent of § 548, as noted above, a court may "only entertain a motion to reconsider if the alleged overlooked controlling decision of law or dispositive factual matter was of a nature that, if considered by the Court, might reasonably have resulted in a different conclusion." *In re Leahey,* 2017 WL 4286136, at *2. Here, to the extent the Debtor suggests that the Court should reconsider and vacate the Marshall Adversary Judgment to disallow Abdoun's claim as a secured claim or in full based upon the purported nullity of the Decree and resulting deed, the *Rooker Feldman* doctrine deprives this Court of subject-matter jurisdiction to do so. Accordingly, reconsideration of the Decree's voidness would not have resulted in a different conclusion.[6]

---

[6]      By way of background, as discussed in the Opinion, under 53 P.S. § 7283(a), a court has no authority to issue a decree authorizing a forced sale of a property due to delinquent real estate taxes until a hearing is conducted on whether the MCTLA's service requirements for the petition filed by the City and rule to show cause have been met and on whether the facts stated in the petition are true. *City of Philadelphia v. Sikder,* No. 1308 C.D. 2017, 2018 WL 6625871, at *3-4 (Pa. Commw. Ct. Dec. 19, 2018); *Labrosciano,* 202 A.3d at 150-51; *City of Philadelphia v. Manu,* 76 A.3d 601, 605-06 (Pa. Commw. Ct. 2013). Thus, as the Court recognized in connection with the Debtor's 11 U.S.C. § 548 claim, a hearing under 53 P.S. § 7283(a) is a jurisdictional prerequisite for a trial court's ability to

The *Rooker Feldman* doctrine deprives federal courts[7] of jurisdiction in cases "brought by state court losers" complaining of injuries caused by state court judgments that were rendered before the district court proceedings commenced and which invite review and rejection of those judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L.Ed.2d 454 (2005); *In re Terry,* 543 B.R. 173, 179 (Bankr. E.D. Pa. 2015). The doctrine applies where (1) the plaintiff in the federal action lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the judgment was entered before the federal suit was filed; and (4) the plaintiff seeks federal review and rejection of the state court judgment.

---

authorize a tax sale and, accordingly, in the absence of a hearing, a trial court lacks jurisdiction to authorize a forced tax sale. *Sikder,* 2018 WL 6625871, at *4 ("In the absence of such a hearing, the trial court lacks jurisdiction to issue a decree authorizing a sheriff's sale."); *Labrosciano,* 202 A.3d at 152; *City of Philadelphia v. F.A. Realty Investors Corp.*, 129 A.3d 1279, 1283 (Pa. Commw. Ct. 2015); *Manu,* 76 A.3d at 606 ("the requirement that the court hold a hearing to determine the accuracy of the facts in the City's Petition is an important due process safeguard.").

Although ordinarily, pursuant to 53 P.S. § 7193.3, parties wishing to contest the validity of a sale conducted under 53 P.S. § 7283(a) must file a petition seeking to overturn the sale within three months of acknowledgment of the sheriff's deed, an otherwise untimely challenge to a sheriff's sale may nonetheless proceed if no authority existed to make the sale in the first place. *Sikder,* 2018 WL 6625871, at *2; *City of Philadelphia v. Moore*, No. 128 C.D. 2016, 2017 WL 474037, at *5 (Pa. Commw. Ct. Feb. 6, 2017). Even under Pa. R. Civ. P. 3132, which provides that "upon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances," a petition to set aside a sale filed post-delivery may be granted where there was no authority to sell the property. *City of Philadelphia v. Danuvia Dev. Corp.*, No. 2133 EDA 2013, 2014 WL 10575395, at *2 (Pa. Super. Ct. Sept. 17, 2014). Additionally, under Pennsylvania law, where "there is no jurisdiction there is no authority to pronounce judgment" and, as a result, "it is never too late to attack a judgment for want of jurisdiction." *Meritor Mortg. Corp. v. Henderson*, 617 A.2d 1323, 1326 (Pa. Super. Ct. 1992). *See also Theolivia C. Braxton v. Cyncon, Inc.*, 2020 CD 2016, 2017 Pa. Commw. LEXIS 85, at *8 (Pa. Commw. Ct. March 6, 2017) ("Only in limited situations…where there is a lack of authority in conducting a sale may a sheriff's sale be set aside after title is acknowledged").

However, confusingly, 53 P.S. § 7283(e) states "upon the delivery by the sheriff of a deed for any property sold under the provisions of this section, the judgment upon which such sale was had shall thereupon and forever thereafter be final and conclusive, and the validity thereof shall not be questioned for any cause whatsoever." *See Johnson v. Zwolak,* Civ. Act. No. 08–4854, 2009 WL 928563, at *3 n.4 (E.D. Pa. Apr. 7, 2009); *City of Philadelphia v. People "R" Us,* CP-11110692, 2013 Phila. Ct. Com. Pl. LEXIS 155, at *6 n.3 (May 30, 2013); *City of Philadelphia v. Rainey,* CP-080203733, 2010 Phila. Ct. Com. Pl. LEXIS 257, at *6-7 (Aug. 19, 2010). Given the scarcity of cases discussing this subsection of the MCTLA, it is difficult to reconcile the apparent conflict among the aforementioned case law and the conclusive language contained in § 7283(e). However, the Court believes that the relevant language of § 7283(e), which reads, "**sold under the provisions of this section**," must be read in conjunction with the requirements set forth in §7283(a), which clearly mandate that a hearing must be conducted prior to any sale, and in doing so it appears that § 7283(e) likely would not foreclose the possibility of a state court challenge to the sale by asserting the State Court's lack of jurisdiction for failure to hold a hearing pursuant to 53 P.S. § 7283(a). 53 P.S. § 7283(e) (emphasis added).

[7]      The *Rooker Feldman* doctrine applies to bankruptcy courts. *Davis v. Bank of Am. N.A. (In re Davis),* 597 B.R. 770, 774 (Bankr. M.D. Pa. 2019).

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010);

*Davis v. Bank of Am., N.A. (In re Davis),* 597 B.R. 770, 774-75 (Bankr. M.D. Pa. 2019); *In re*

*Terry*, 543 B.R. at 179.

Generally, pursuant to the *Rooker Feldman* doctrine, when evaluating objections to

proofs of claim and related bankruptcy proceedings, federal courts are bound to recognize state

court judgments as creating enforceable obligations.[8]  *See e.g.*, *In re White v. McDermott*, 535

B.R. 749, 757 (E.D. Mich. 2015) ("But the Whites not only argue that their mortgage liability

should be reduced. They also argue that the mortgage itself is invalid. These arguments were

presented to the Bankruptcy Court in the Whites' objection to Frankenmuth Credit Union's proof

of claim. The Bankruptcy Court rejected Whites' arguments that the mortgage was invalid on the

basis of the Rooker-Feldman doctrine."); *Miller v. Johnson (In re Miller)*, 626 B.R. 503, 509

(Bankr. S.D. Ohio 2021); *In re Rodriguez,* Case No. 18-20215-beh, 2018 Bankr. LEXIS 3742, at

*7 (Bankr. E.D. Wis. Nov. 29, 2018); *In re Spirit of Prayer Ministries, Inc.,* No. 07–43858–

DML–11, 2009 WL 3049206, at *2 (Bankr. N.D. Tex. Sept. 23, 2009).

Additionally, challenges in federal court to real estate tax and mortgage foreclosure

judgments, and ensuing forced sales, over defects like failure to properly serve the petition or

complaint have largely been unsuccessful due to the constraints of the *Rooker Feldman* doctrine,

as federal courts have tended to view these challenges as appeals of the foreclosure judgment

---

[8]        Of course, 11 U.S.C. § 502(b)(1) disallows claims which are unenforceable against the debtor and property
of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or
unmatured, meaning that, with narrow exceptions, any defense to a claim that is available outside of the bankruptcy
context is also available in bankruptcy. *Settlers' Housing Serv. Inc. v. Schaumburg Bank & Trust Co., N.A. (In re
Settlers' Housing Serv., Inc.),* 568 B.R. 40, 65 (Bankr. N.D. Ill. 2017). However, before considering defenses
available to a debtor under applicable state law, courts must determine whether the *Rooker Feldman* doctrine or
preclusion principles prohibit their consideration in federal court. *In re Razzi*, 533 B.R. 469, 478 (Bankr. E.D. Pa.
2015) ("These defenses, if valid under state law, also are cognizable under applicable bankruptcy law in the claims
objection and allowance process. In light of the existence of the C.P. Judgment, the threshold issue is whether the
Debtor may raise his defenses in this court – either because the Rooker-Feldman doctrine divests this court of
jurisdiction or because the litigation of the defenses is precluded by res judicata.").

itself. *See e.g., In re Varquez*, 502 B.R. 186, 189 (Bankr. D. N.J. 2013); *In re Davis*, 597 B.R. at 774-76 (challenge to a mortgage foreclosure judgment on the basis of a mortgagee's lack of standing and lack of proper service of the foreclosure complaint in an attempt to vacate a sheriff's sale was barred by *Rooker Feldman* doctrine).

In the instant case, the first and third factors are met because the Debtor clearly lost in the state court action brought by the City to recover delinquent real estate taxes and the Decree, which constitutes a judgment, was entered prior to this Adversary Proceeding.[9] *See In re Terry*, 543 B.R. at 179 (debtor lost in a state court action brought by the City to recover delinquent real estate taxes and judgment was entered before the bankruptcy petition was filed). Additionally, the second factor is met since the Decree, which resulted in the tax sale, was the source of the Debtor's injuries because if the Decree had not been entered, there simply would have been no forced sale of the Property in the first place, and Abdoun would never have had a basis to assert a secured claim against the Debtor, thus the injury which the Debtor asserts flows directly from the State Court judgment. *See Montalvo v. Vela (In re Montalvo),* Case No: 16-70186, Adv. No. 16-7010, 2019 WL 183517, at *7 (Bankr. S.D. Tex. Jan. 11, 2019); *In re Davis*, 597 B.R. at 775; *In re Terry*, 543 B.R. at 179.

Finally, the fourth factor is satisfied because by inviting the Court to find that no evidence of a valid secured claim exists due to the nullity of Abdoun's deed, the Debtor seeks to have the Court review the Decree authorizing the forced sale and reject it and the resulting deed, the basis for Abdoun's secured claim, on the basis that the Decree is void. *See e.g., Leonard v. HSBC Bank USA, NA* , No. 20-cv-1518 (LJL), 2021 WL 638201, at *13 (S.D.N.Y. Feb. 16, 2021) ("Leonard lost in the state court foreclosure proceeding that preceded her bankruptcy court

---

[9]    The *Rooker Feldman* doctrine applies to default judgments as well as to judgments entered following a trial on the merits. *Stewart v. JPMorgan Chase Bank, N.A. (In re Stewart),* 473 B.R. 612, 630 (Bankr. W.D. Pa. 2012).

filing, she complained in the bankruptcy court of an injury caused by that state court proceeding and invited the bankruptcy court to review that proceeding, and she asked the bankruptcy court to declare the judgment obtained in state court to be void and not to honor it. "[T]he state court was the proper venue to challenge the foreclosure action, and . . . Rooker-Feldman bar[s] the [appellant's] claims insofar as she sought to undermine the foreclosure judgment."). In fact, the Court could *only* grant the Debtor's requested relief by reviewing and rejecting the Decree as void.

However, some courts have recognized a rarely invoked exception to the *Rooker Feldman* doctrine where the judgment is void ab initio. *In re Knapper*, 407 F.3d 573, 581 n.16 (3d Cir. 2005); *In re James*, 940 F.2d 46, 52 (3d Cir. 1991) ("There appears to be only one exception to this hard and fast rule of federal-state comity, and it comes into play only when the state proceedings are considered a legal nullity, and thus void ab initio. A federal bankruptcy court may intervene only when the state proceedings are void ab initio; it lacks the power where it simply disagrees with the result obtained in an otherwise valid proceeding."); *Schroeder v. Bank of America Corp.*, Civil No. 3:12–CV–589, 2012 WL 6929272, at *9 (M.D. Pa. Nov. 19, 2012); *Buchel v. Option One Mortg. Corp.*, Civil Action No. 10–cv–1079 (NLH)(KMW), 2010 WL 4878741, at *4 n. 5 (D. N.J. Nov. 24, 2010); *In re Dabrowski*, 257 B.R. 394, 406 (Bankr. S.D. N.Y. 2001). The rationale for this exception is that because a void judgment is null, rejecting it is a mere formality and does not intrude upon the notion of mutual respect for federal-state interests. *In re James*, 940 F.2d at 54; *In re Dabrowski*, 257 B.R. at 394.

Nevertheless, bankruptcy courts are the only federal courts to have utilized this exception and have largely only done so where state court judgments were void because they were entered in violation of the automatic stay or the discharge injunction. *Lambert v. Blackwell*, 387 F.3d

210, 240 n. 25 (3d Cir. 2004) ("We reached that conclusion because an automatic stay obviates

the state court's jurisdiction and renders its decision void ab initio. *In re James* differs from this

case (and most cases) because the state court's jurisdiction, or lack thereof, was a function of

federal law..."); *Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003); *Schroeder*, 2012 WL

6929272, at *8; *Buckskin Realty, Inc. v. Windmont Homeowners Ass'n (In re Buckskin Realty,

Inc.)*, Case No. 1-13-40083-nhl, Adv. Pro. No.: 15-01004, 2016 WL 5360750, at *5 (Bankr. E.D.

N.Y. Sept. 23, 2016); *In re Spiers*, Case No. 13-32406, 2015 Bankr. LEXIS 1901, at *9 (Bankr.

W.D. N.C. June 10, 2015) ("Absent a clear lack of jurisdiction or violation of federal law, this

Court is not at liberty to opine on the validity of a state court order, especially one that was not

appealed or otherwise challenged in the appropriate state forum.") (citing *In re Walker*, 416 B.R.

449, 461 (Bankr. W.D.N.C. 2009)); *Von Kiel v. U.S. Dept. of Health and Human Servs. (In re

Von Kiel)*, 473 B.R. 78, 87 (Bankr. E.D. Pa. 2012); *In re Dabrowski*, 257 B.R. at 406.

However, in a recent non-precedential opinion from the Third Circuit Court of Appeals

("Third Circuit"), the Third Circuit suggested that it may now reject that a voidness exception to

the *Rooker Feldman* doctrine exists, stating:

> [w]hile in dictum we have observed that vacating a state court
> judgment that is void as a matter of state law may 'not intrude upon
> the notion of mutual respect in federal-state interests,' we have not
> so held, and even the single Ninth Circuit case to which we cited for
> that proposition did not involve an exception to *Rooker Feldman*,
> but rather, rested on the conclusion that the bankruptcy court had
> exclusive jurisdiction of the matter. The exception Plaintiffs propose
> thus lacks support and would appear to require exactly the sort of
> 'review and rejection' of state court judgments that the *Rooker-
> Feldman* doctrine was designed to avoid.

*Todd v. United States Bank N.A.,* 685 Fed. Appx. 103, 106 (3d Cir. 2017), *reh'g denied*, *Todd v.
United States Bank Nat'l Ass'n*, Nos. 16-1126, 16-1255, 2017 U.S. App. LEXIS 27963, at *2 (3d
Cir. May 18, 2017), *cert. denied*, *Todd v. U.S. Bank, N.A.*, 138 S. Ct. 449 (U.S., Nov. 13, 2017).

The *Todd* court hinted at precisely the roadblock before the Court in the instant case—that, despite the ostensible formality of rejecting a state court judgment by virtue of its being void, to determine its voidness under state law, rather than as a matter of exclusive federal bankruptcy court jurisdiction, as in the substantial majority of cases which have applied a "voidness exception" to *Rooker Feldman*, invites the exact type of review of state court judgments *Rooker Feldman* was intended to prevent. *See e.g., In re James*, 940 F.2d at 52-3 (discussing the important distinction between when a bankruptcy court overturns a state court judgment which constitutes a "collateral attack" upon the bankruptcy court's exclusive jurisdiction and when a bankruptcy court infringes upon the state court's judicial sovereignty). As the Third Circuit has opined, this Court may only reject state court judgments entered in matters over which the Bankruptcy Court had exclusive jurisdiction, not act as an appellate court determining the validity of a state court judgment under state law in the first instance, as the Debtor requests.

Nevertheless, the Debtor invokes a novel and compelling argument—identified by Judge Frank—that the *Rooker Feldman* doctrine does not apply in evaluating claim objections in bankruptcy on the basis that:

> [a] debtor who files an objection to a proof of claim may not fit the description of a state-court loser bringing a 'case' in federal court requesting review and rejection of the state-court judgment. Certainly, the bankruptcy debtor has initiated a federal proceeding – at least in the vast majority of the filings, which are voluntary bankruptcy cases. (And, a bankruptcy trustee who files a claims objection would not fit the description either). Further, while a debtor (or bankruptcy trustee) is, in some sense, the moving party in the contested matter that arises from a claims objection, a claim objection can also be conceptualized as a defensive response to the affirmative demand for payment made through the filing of the proof of claim. To the extent that the objector's request that a prior state-court judgment be disregarded is perceived as a defensive request for relief, *Rooker–Feldman* arguably is not implicated.

17

*In re Razzi*, 533 B.R. 469, 478 n. 8 (Bankr. E.D. Pa. 2015). The debtor in *In re Razzi* challenged

the allowance of a proof of claim which was supported by a state court judgment but based upon

an underlying mortgage, alleging that the note and guarantee which supported the mortgage were

unenforceable under Pennsylvania law because the initial mortgage transaction either lacked

consideration or was based upon fraud by the mortgagee. *In re Razzi*, 533 B.R. at 478. Judge

Frank ultimately found *Rooker Feldman* inapplicable because the debtor's claim objection

complained of issues which "preceded and [were] entirely independent of the entry of the state

court judgment," and consisted of an injury arising *prior* to, not from, said judgment. *Id.*

Although there is case law supporting that claim objections are actually defenses to

proofs of claim, as far as this Court can tell, Judge Frank's position has not yet been widely

adopted. *See e.g.*, *Miller v. New Penn Financial LLC (In re Miller)*, Case No. 15-70981-WLH,

Adv. Pro. No. 18-5198-WLH, 2020 WL 1933922, at *4 (Bankr. N.D. Ga. Apr. 21, 2020) ("In the

context of a proof of claim, the party that files a proof of claim is the aggressor. The filing of a

proof of claim itself, from a procedural standpoint, is tantamount to the filing of a complaint in a

civil action. An objection to the claim is considered to be the answer to the claim. This may be

true even if the claim objection is presented in the form of an adversary proceeding."). *But See*

*e.g.*, *Isaacs v. DBI-ASG Coinvestor Fund, III, LLC (In re Isaacs)*, 895 F.3d 904, 914 (6th Cir.

2018) (*Rooker Feldman* barred a debtor's claim that foreclosing creditor did not have a lien that

attached to debtor's property based on state court's foreclosure judgement, but the question of

whether the mortgage was perfected was not decided); *Leonard,* 2021 WL 638201, at *4

(debtor's challenge to a proof of claim, based on a prepetition mortgage foreclosure and resulting

lien, was denied under *Rooker Feldman* where the debtor alleged the sale was the product of

fraud and an abuse of the judicial process); *Flamer v. Wells Fargo Bank, N.A.*, No. 1:18-cv-

11414-NLH, 2019 WL 2082961, at *3-5 (D. N.J. May 13, 2019) (bankruptcy court properly

dismissed a debtor's challenge to the validity of a mortgage foreclosure under *Rooker Feldman*);

*Miller v. Johnson (In re Miller)*, 626 B.R. 503, 509 (Bankr. S.D. Ohio 2021) (debtor's objection

to mortgagee's claim based on purported unenforceability of the mortgage was precluded by

*Rooker-Feldman* doctrine where the debtor raised or could have raised those issues in state

court); *In re MWM & Sons, Inc,* Case No. 13-22061PM, 2014 Bankr. LEXIS 4773, at * (Bankr.

D. Md. Nov. 18, 2014) (Debtor's objection to proof of claim challenging state court judgment

overruled for lack of jurisdiction due to *Rooker Feldman* doctrine); *In re Leigh,* Case No. 12-

10128, 2013 Bankr. LEXIS 1730, at *9 (Bankr. N.D. Ohio April 26, 2013) (finding filing an

objection to proof of claim satisfies the *Rooker Feldman* requirement that the state court loser

initiate federal proceedings). Even in *In re Razzi,* the outcome was entirely unrelated to this

novel theory. *In re Razzi*, 533 B.R. at 478 n. 8 ("I do not base my decision on this theory, but the

theory is consistent with my conclusion.").

Based on the foregoing, this Court is bound by the principles of *Rooker Feldman* and

lacks the power to disallow Abdoun's secured claim based upon the purported nullity of the

Decree because to do so would be to inappropriately review and reject a state court judgment

which the Debtor never appealed or challenged in state court.

**D. The Debtor Has Not Established that the Court Erred by Measuring the "Reasonably Equivalent Value" of the Property Against the Price That Would Have Been Received Had the Sale of the Property Complied with Applicable State Law Instead of Against its Fair Market Value.**

In connection with the Debtor's third claim of error, she argues that, because the State

Court lacked jurisdiction to authorize the sale of the Property due to its failure to hold a Hearing,

this Court erred by measuring the Property's reasonably equivalent value for purposes of 11

U.S.C. § 548 against the price that would have been received at a regularly conducted tax sale

instead of against the Property's fair market value. The Court disagrees. As set forth in the

Opinion accompanying the Marshall Adversary Judgment, the Supreme Court in *BFP* declared

that:

> *[a]ny* irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale *(which we think would be the price that would have been received if the foreclosure sale had proceeded according to law).*

*BFP*, 511 U.S. at 545-46 (emphasis added).

In so declaring, the Supreme Court did not set forth a separate standard for avoiding

transfers of property involving jurisdictional irregularities as opposed to other irregularities

which, while not jurisdictional, would justify setting aside the transfer. Unless and until the

Supreme Court declares that transfers of property involving jurisdictional irregularities may be

avoided if the price received was not reasonably equivalent to the property's fair market value,

this Court must measure the reasonably equivalent value of the Property against the price that

would have been received had the sale been conducted in accordance with state law as instructed

in *BFP*.

In any event, the Debtor already argued in her pre-judgment, post-trial supplemental brief

that the Court should measure the reasonably equivalent value of the Property against its fair

market value for substantially the same reasons she articulates in the Reconsideration Motion.

*Compare* Case No. 17-88 ECF 34 Debtor's Supp. Br. 3-5 *to* Mot. for Recons. ¶¶ 5-10. The Court

already considered and rejected those arguments. *Marshall*, 613 B.R. at 209-12. As discussed

above, motions to reconsider are not to be used either as a means to reargue matters already

argued and disposed of or to relitigate a point of disagreement between the Court and the litigant.

*In re Stuart,* 402 B.R. at 120. Ultimately, the Debtor's disagreement with the Court's conclusion regarding the standard for measuring the reasonably equivalent value of the Property does not give the Court a basis to reconsider the Marshall Adversary Judgment.

**E.    The Debtor Has Not Established the Court Erred in Concluding That the UTPCPL, Codified as 73 P.S. § 201-9.2, Does Not Permit Awarding Emotional Distress Damages.**

In connection with the Debtor's fourth claim of error, she argues that the Court erred by declining to award the Debtor emotional distress damages under 73 P.S. § 201-9.2, for Abdoun's violations of the FCEUA. Mot. for Recons. at 6. In support of this position, the Debtor essentially contends that the Court overlooked the provision of 73 P.S. § 201-9.2 stating that "[t]he court. . . may provide such additional relief as it deems necessary or proper." *Id.* at ¶ 18. To the contrary, the Court did not overlook that provision. Rather, it followed the *significant* weight of persuasive, recent authority in this circuit holding that 73 P.S. § 201-9.2 does *not* permit awarding emotional distress damages despite the statutory language giving courts discretion to allow for other necessary or proper relief besides that explicitly referenced in the statute. *Marshall* 613 B.R. at 218. The Debtor has directed the Court to no controlling authority to the contrary. Furthermore, the Debtor could have made this argument prior to judgment but did not. As discussed *supra*, a party cannot use Rule 59(e) to raise arguments that could have been raised prior to judgment.[10] *Est. of Scotty Ray Sisk,* 270 F. Supp. 2d at 1279-80.

---

[10]    Furthermore, the Debtor now argues for the first time that "additional relief" under 73 P.S. § 201-9.2 includes ordering forfeiture of all or part of Abdoun's asserted claim. Mot. for Recons. ¶ 24. However, she offers no controlling authority suggesting 73 P.S. § 201-9.2 would require, or even permit, the court to eliminate or reduce Abdoun's claim based on his wrongful conduct without regard for the Debtor's actual damages. Accordingly, the Court finds no basis to conclude that it committed a *clear* legal error by not *sua sponte* eliminating or reducing Abdoun's claim on account of Abdoun's FCEUA violations. In any event, a party may not invoke Rule 59(e) to raise arguments that could and should have been made before judgment issued. *Est. of Scotty Ray Sisk,* 270 F. Supp. 2d at 1279-80. Thus, the Court may not reconsider its damages award or the manner in which it offset that damages award against Abdoun's claim on the basis that it could have ordered relief it was not obligated to order.

Accordingly, the Court finds no basis to reconsider this portion of the Marshall Adversary Judgment.

**F.  The Court Did Not Err by Failing to Award Damages for Emotional Distress Based on an Unpled Claim for Intentional Infliction of Emotional Distress in Tort.**

The Debtor argues in her fifth claim of error, presented for the first time in her supplemental brief in support of the Reconsideration Motion, that the Court erred in not awarding the Debtor damages for common law intentional infliction of emotional distress and that Fed. R. Civ. P. 54(c) ("Rule 54") requires the Court to do so, based upon the evidence presented at Trial, even though this cause of action was never previously pled or even referenced at Trial. Case No. 17-88 ECF 58 Suppl. Br. in Supp. of Pl's. Mot. to Recon. at 16. However, Rule 59(e) does not permit the Court to reconsider the Marshall Adversary Judgment based upon an argument which could have been raised prior to judgment either at Trial or in Debtor's post-trial proposed findings of fact and conclusions of law but was not. *See Est. Scotty Ray Sisk,* 270 F. Supp. 2d at 1279-80. Even if the Court could consider this argument for the first time post-judgment, Rule 54 does not authorize the Court to grant the relief Debtor seeks.

Rule 54(c), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7054, provides, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). As the Third Circuit has explained:

> [Rule 54(c)] was meant to protect a plaintiff from clumsy pleading, which, through technical oversight, might deprive it of a deserved recovery. The rule's most common usage is when the amount of the award varies from the demand for relief. The rule has also been used to allow for the award of attorney's fees and costs even though none was demanded, or for recovering interest on a claim as damages. As the Advisory Committee explains, it makes clear that a judgment should give the relief to which a party is entitled, regardless of whether it is legal

22

or equitable or both. In other words, Rule 54(c) addresses and cures a limited formal problem. It is not designed to allow plaintiffs to recover for claims they never alleged.

Here, by contrast, appellants are not seeking to vary relief but to add judgments based on new claims of additional improper beneficiary assignments. By trying to invoke Rule 54(c), appellants confuse the demand for relief with the claims on which that demand is based. While inasmuch as the demand for relief does not constitute part of the pleader's claim for relief, a failure to demand the appropriate relief will not result in a dismissal, the converse is not true. That is, the court cannot provide a remedy, even if one is demanded, when plaintiff has failed to set out a claim for relief.

*USX Corp. v. Barnhart,* 395 F.3d 161, 165-66 (3d Cir. 2004) (citing 10 Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2664, at 183 (3d ed.

1998)). Additionally, the Third Circuit described the bounds of Rule 54 as follows:

> [w]hat a court may do [under Rule 54(c)] ultimately is limited by fundamental notions of due process and fair play. *Sylvan Beach, Inc. v. Koch,* 140 F.2d 852, 861-862 (8th Cir. 1944). Fed.R.Civ.P. 54(c) permits relief based on a particular theory of relief only if that theory was squarely presented and litigated by the parties at some stage or other of the proceedings. *Cioffe v. Morris,* 676 F.2d 539, 541 (11th Cir. 1982). Put another way, relief may be based on a theory of recovery only if that theory was presented in the pleadings or tried with the express or implied consent of the parties. *Monod v. Futura, Inc.,* 415 F.2d 1170, 1174 (10th Cir. 1969).
>
> **When relief is based on a theory of recovery not raised in the pleadings, the requirements of Fed. R. Civ. P. 15(b) may come into play.** *Cioffe,* 676 F.2d at 541. Fed. R. Civ. P. 15(b) requires that unpled issues which are tried with the express or implied consent of the parties are to be treated as if they were raised in the pleadings. The court shall permit the pleadings to be amended to conform to the evidence offered when the presentation of the merits of the action will be subserved and the opposing party will not thereby be prejudiced.

*Evans Prods. Co. v. W. Am. Ins. Co.*, 736 F.2d 920, 923-24 (3d Cir. 1984) (emphasis added).

Based on the foregoing, because a theory of recovery based on the tort of intentional

infliction of emotional distress was never raised at any time in the pleadings, pre-trial statement,

during Trial, in the post-trial proposed findings of fact and conclusions of law, or even in the

Reconsideration Motion itself, the Court must consider whether under Fed. R. of Civ. P. 15(b) ("Rule 15(b)") the parties at least impliedly consented to treat such cause of action as if it had been raised in the pleadings.

Pursuant to Rule 15(b)(2), "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." As the Court discussed in the Opinion with respect to the Debtor's § 362(k) claim, to determine if there has been implied consent, the court must consider whether the parties recognized that the unpled issue entered the case at trial, whether the evidence that supports the unpled issue was introduced at trial without objection, and whether a finding of trial by consent would prejudice the opposing party's opportunity to respond. *Marshall*, 613 B.R. at 224 n. 20 (citing *Douglas v. Owens,* 50 F.3d 1226, 1236 (3d Cir. 1995)). As the Third Circuit has explained, "an issue has not been tried by implied consent if evidence relevant to the new claim is also relevant to the claim originally pled, because the defendant does not have notice that the implied claim was being tried." *Douglas v. Owens,* 50 F.3d 1126, 1237 (3d Cir. 1995). If evidence of a pleaded issue and an unpleaded issue overlaps, there is no implied consent absent a clear indication that the party using the evidence is attempting to raise a new issue. *Portis v. First Nat'l Bank*, 34 F.3d 325, 332 (5th Cir. 1994).

It is clear from the record that the Debtor alleged emotional distress damages only as a form of actual damages under the FCEUA as enforced by the UTPCPL, not under any theory grounded in common law tort. Trial Tr. at 6:12-5; Case No. 17-88 ECF 1; Compl. at 9; Pl. Proposed Concl. of Law ¶¶ 46-7, 53. At no point during Trial, in Debtor's post-trial proposed findings of fact and conclusions of law, or even in the Reconsideration Motion did Debtor ever raise her intention to seek to recover for intentional infliction of emotional distress or even

reference the cause of action. This is in contrast to her explicitly informing the Court and

Abdoun at Trial that she intended to amend the pleadings based upon the evidence presented at

trial to add a cause of action for a willful violation of the automatic stay under § 362(k) and

discussing the same in her proposed conclusions of law. Trial Tr. 6:19-7:10; Case No. 17-88

ECF 24 Pl. Proposed Concl. of Law ¶¶ 40-42.

Despite evidence reflecting that Abdoun caused Debtor emotional distress, there is no

indication that Abdoun would have recognized an additional unpled cause of action in tort—

intentional infliction of emotional distress—had entered the Trial, given the specific context for

which that evidence was entered and the fact that Debtor never even hinted that she intended to

use that evidence in connection with a claim for intentional infliction of emotional distress.

Accordingly, if the Court considered the pleadings amended to include a cause of action for

intentional infliction of emotional distress under these circumstances, Abdoun's opportunity to

respond would be prejudiced, considering that issue was never raised at Trial, in Debtor's post-

trial findings of fact and conclusions of law, or in the Reconsideration Motion. Accordingly, the

record does not support a finding that the parties either expressly or impliedly consented to

litigate a claim in tort, and to hold otherwise would prejudice Abdoun.

## IV.    CONCLUSION

Based on the foregoing, the Court finds that the Debtor has failed to meet her burden and

the Reconsideration Motion will be DENIED.

Date: December 21, 2021

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge